## ROGERS v. UNION PAC. R. CO.
### No. 10071.

Circuit Court of Appeals, Ninth Circuit.
Sept. 1, 1944.
Rehearing Denied Nov. 13, 1944.

Carl D. Etling, of Portland, Or., and David C. Silven, of Baker, Or., for appellant.

Roy F. Shields, Hugh L. Biggs, and Frederick J. Betz, all of Portland, Or., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a judgment in favor of appellant for services rendered by the appellant to the appellee, Union Pacific Railroad Company, and to its predecessors, as pumper, engine watchman, and section hand. The appellant claims that the amount awarded him by the judgment is less than he claimed and was owed to him. In the main the facts are undisputed and the amount to which appellant is entitled depends upon the terms of the written contract under which the services were rendered. The case was tried without a jury, the right to which was waived by the parties.

On May 13, 1919, appellant was employed by the Director General of Railroads, United States Railroad Administration, on the lines of the Oregon-Washington Railroad & Navigation Company. On March 1, 1920, control of the railroad was returned to the company, and appellant continued in its employ through December 31, 1935. On January 1, 1936, appellee leased the properties and assumed the liabilities of the Oregon-Washington Company, and appellant remained employed by it until after January 15, 1937.

Some time before 1936 appellant joined the Brotherhood of Maintenance of Way Employees, with which his employers have, since March 1, 1922, contracted regarding employment conditions, and he has ever since remained a member thereof in good standing. The by-laws of the Brotherhood provide that grievances of members shall when possible be settled by negotiation between representatives of the Brotherhood and of the Railroad Company and that such settlement if made "shall definitely dispose of the matter at issue." Pursuant to this provision, appellant's claims were considered by representatives of appellee and the Brotherhood in conference, and on February 6, 1937, they agreed that $1,218.41 was due to appellant. The appellee at once tendered the amount of the award. The tender was rejected.

Thereafter appellant petitioned the National Railroad Adjustment Board for adjustment of his claim but the Board on July 12, 1937 declined to entertain the petition on the ground that because of the settlement agreement above referred to there was no pending and unadjusted dis-

pute within the scope of the Railway Labor Act, 45 U.S.C.A. § 153.

On February 17, 1939 appellant filed in the District Court his complaint, seeking $13,462.40 back wages together with interest, costs, and $2,500 attorney fees. Federal jurisdiction rests upon the diverse citizenship of the parties. Appellee answered the allegations of the complaint and set up three affirmative defenses: That a settlement agreement had been made; that the National Railroad Adjustment Board had made final disposition of the claims; and that if the Board's disposition were not final, the matter was still pending before it. A pre-trial conference was held at which the issues were defined; thereafter, the court ruled against the affirmative defenses and, pursuant to stipulation, submitted to a Special Master the issues numbered I to V(e), inclusive. The Master's findings on those issues were adopted by the court, and the further questions of interest and attorney fees submitted to it. As to both of the latter questions the Master ruled against appellant; the court adopted his report as to interest; as to attorney fees it allowed $500. The total judgment awarded to appellant was $1,723.16, with $500 attorney fees, two-thirds of the costs before the master, and all other costs.

No appeal has been taken by the appellee, and the correctness of rulings adverse to it is not before us.

■ The first point concerns appellant's wages as a pumper at Munley, Oregon, from May 13, 1919, to April 30, 1923. On September 1, 1918, the Director General of Railroads, by Supplement 8 to General Order 27, provided that wages of certain railroad workers, including pumpers, should be increased $25 a month over the rate in effect on January 1, 1918. Interpretation 6 of this order provided a formula for reducing hourly, daily and weekly rates of pay to a monthly basis, and also provided that in the case of hourly paid employees, the increase should be computed at 12 or 13 cents an hour, depending on the type of work done. Appellant was paid $111.33 a month, which was arrived at by adding 12

cents an hour, for an eight hour day, to the base rate of $2.70 a day. He contends that his true base pay was 46.75 cents an hour, which with the 12 cents addition would make his proper monthly pay for this period $113.75 (subject to various subsequent modifications, the effect of which is not disputed). The court below found that his proper pay was $107.13. That was arrived at by reducing the original $2.70 a day to a monthly basis according to the formula provided by the contract and adding thereto $25 for the month. From this it followed that appellant was overpaid $97.90 during this period, and the court set off that sum against amounts found to be due to appellant under certain of his other contentions.

Although appellant argues before us in support of $113.75 a month, he is not in a position to do so, having expressly abandoned that contention at the trial. Alternatively he contends for the $111.33 that he actually received. His contentions rest upon the premises that his initial base pay was other than $2.70 a day and that the increase provided by Supplement 8 to General Order 27, as construed by Interpretation 6, was to be computed at 12 cents an hour rather than $25 a month. The finding that his initial base pay was $2.70 a day is supported by substantial evidence, including appellant's own testimony; we must accept it as correct. It is apparent from a reading of Supplement 8,[1] and Interpretation 6,[2] that the use of 12 cents an hour as the increase provided by Supplement 8 was only intended in the case of employees paid on an hourly basis. Since appellant was, as we have just held, paid on a daily basis, the proper procedure was to reduce that to a monthly figure by the formula provided by Interpretation 6, supra, and used by the court below, and add $25 thereto. The computation of the court below was correct.

■ During the same period appellant received payments totaling $188.19 for overtime work. The court found that he was not entitled to overtime as his monthly wage covered all services rendered; accordingly it set off that sum against the

---

[1] "To determine the monthly rate of a daily paid employee, multiply the established daily rate by the recognized number of working days constituting a calendar year (including Sundays and/or holidays where they have been considered a part of the employee's assignment) and divide by 12."

[2] "Article 1, Sub. D (h)—For drawbridge tenders and assistants, pile drivers, ditching and hoisting firemen, pumper engineers and pumpers, crossing watchmen or flagmen, lamp lighters and tenders, add to the rate in effect as of January 1, 1918, prior to the application of General Order No. 27, $25.00 per month."

recovery allowed appellant on other points. Appellant claims that he was entitled to the overtime, relying on the provision of the working agreement then in effect between the Railroad Company and the Union that "Except as otherwise provided in these rules, eight (8) consecutive hours, exclusive of the meal period, shall constitute a day's work." However, the agreement also provided that (subject to exceptions not claimed to be applicable) "Positions not requiring continuous manual labor such as track, bridge and highway crossing watchmen, signal men at railway non-interlocked crossings, lamp men, engine watchmen at isolated points, and pumpers, will be paid a monthly rate to cover all services rendered." The trial court was correct in holding that appellant's work fell within this specific exception to the general rule on which he relies, and hence that he was not entitled to the overtime payments which he received.

■ Appellant contends that in any event it was error to set off against his recovery the amount of the foregoing overpayments, because no set-off or counterclaim was pleaded by appellee and because the overpayments were made due to mistake of law (i.e., interpretation of the orders of the Director General of Railroads) and so not recoverable by appellee. The contention is without merit. Appellant is suing for a single sum: the difference between wages due to him and wages paid to him. To establish that difference he must show what was in fact due and what was in fact paid. In showing that less was due or that more was paid than appellant contends, appellee is not asserting an affirmative defense required to be pleaded nor a counterclaim to be separately considered; it is merely showing that appellant is mistaken as to some of the items of debit and credit going to make up the balance for which he sues. This it is clearly entitled to do.

■■ In further answer to appellant's contention that appellee's right to set off overpayments is foreclosed because not pleaded, it may be pointed out that the issue of overpayment was expressly raised in the pretrial order, and so was properly before the court. Rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Moreover, evidence of overpayments was introduced without objection and the issue was tried by implied consent of the parties. That in itself would require us to treat it as if raised by the pleadings. Rule 15(b), Federal Rules of Civil Procedure.

■ Appellant's second point concerns a claimed increase in pay from May 1920 to November 1935. Decision No. 2 of the United States Railroad Labor Board, effective May 1, 1921, provided that pay of certain employees, including pumpers, should be increased 8½ cents an hour, and that "For employees paid by the month, add two hundred and four (204) times the hourly rate specified to the monthly rate." Two hundred four times the specified hourly rate of 8½ cents amounts to $17.34, and appellant received a monthly increase in that amount. However, there was submitted to the Railroad Labor Board (not in connection with the present case) the question, "How shall the increase provided in Section 7, Article III of Decision No. 2 be applied to employees who are assigned to work the calendar days of the month, are paid a monthly rate and received no additional compensation on Sundays and holidays?" The Board answered, in part, "The employees specific in Section 7, Article III, of Decision No. 2, paid on a monthly basis and who do not receive compensation in addition thereto for services rendered on Sundays or holidays, shall receive an increase in their monthly salary in the sum represented by multiplying 8½ cents by 204, i.e., $17.34." Appellant contends that the foregoing interpretation entitled him to receive an increase of $17.34 a month for work done on Sundays and holidays, in addition to the increase of $17.34 for work done during the week. The evidence indicates that that construction has never been placed upon the ruling by anyone concerned with it, and we regard it as untenable upon its face. The trial court rightly rejected it.

■ Appellant's third point concerns the periods from February 5, 1921, to March 25, 1921, and July 9, 1921, to December 28, 1922. During those periods he worked part time as a section laborer in addition to his pumping, because the latter did not require his full time. He was paid for time actually spent at section work at the rate for section laborers, and for the time spent in pumping at the rate for pumpers.

The parties agree that the applicable rule then in effect provided:

"An employee working on more than one class of work on any day will be allowed the rate applicable to the character of work preponderating for the day, except that

when temporarily assigned by the proper officer to lower rated positions when such assignment is not brought about by a reduction of force or request or fault of such employee, the rate of pay will not be reduced. * * *"

Appellant contends that his assignment to section work was temporary, and hence that he was entitled under the exception to be paid at the pumper's rate for all his work. The trial court found that the assignment to section work was not temporary, and the evidence supports that finding. It is true that, as appellant points out, his section work was subordinate to the requirements of his job as a pumper; but that does not require the conclusion that it was temporary work. On the contrary, the arrangement when entered into was intended to be a permanent one. We find no error in the trial court's conclusion that appellant's assignment to section work did not fall within the exception contained in the rule quoted above.

The trial court held that appellant should have been paid each day at the rate for the type of work preponderating for the day; with that we agree. It further held that when a day was evenly divided between two types of work, each type should be paid at its own rate, and that for work in excess of eight hours in a day, the first two hours should be paid at the rate for work preponderating for the day, and the remainder at one and one-half times that rate. Appellant does not attack these holdings otherwise than by his general contention that because his assignment to section work was temporary he was entitled to be paid for all work at the pumper's rate. Having rejected that contention we find no ground for reversal of the holdings as to evenly divided days and overtime work. The court's conclusion was that by reason of errors in the method of computing his pay in this connection appellant was underpaid $35.82. With this we agree.

Appellant's forth point was abandoned at the trial below and is not in issue here.

■ Appellant's fifth point involves three matters. The first concerns the proper adjudgment of his monthly pay from September 1923 to March 1924, from April 1925 to May 1926, and from December 1926 to June 1934, by reason of the fact that during those periods his working day was increased to ten hours from the original eight. The applicable rule for making such adjustment provides:

"If present assigned hours are increased or decreased the monthly rate shall be adjusted pro rata as the hours of service in the new assignment bear to the hours of service in the present assignment except that hours above ten (10) either in new or present assignment shall be counted as one and one-half in making adjustments."

Appellant was actually paid during these periods $129.97 a month. He contends that he should have received $139.05 a month. He arrives at that figure by taking as his original base pay for an eight-hour day $111.33, deducting $4.08 (the net effect of several undisputed intervening increases and decreases) and adjusting it for a ten-hour day by adding sixty times (two hours a day for 30 days) an hourly rate arrived at by dividing the foregoing figure ($107.25) by 204. The latter process is predicated upon a provision of the agreement of March 1, 1922, "To compute the hourly rate of monthly rated employees, divide the monthly salary by 204."

Appellant's computation discloses two mistakes. First, we have already held that his original base pay was $107.13 and not $111.33. Second, the provision first above quoted for adjusting monthly salaries to changes in the length of the working day (the applicability of which appellant concedes) does not require any determination of the hourly rate; it merely requires monthly salary to be changed in proportion to the change in hours worked. There is therefore no occasion to apply the provision on which appellant relies. Appellant's work day was increased to ten hours from eight, or 25%. The proper procedure was to take appellant's initial pay of $107.13, deduct $4.08 on account of intervening increases and decreases, and increase the result ($103.05) by 25%, making a total of $128.81. This represents the effect of a somewhat more circuitous computation gone through by appellant's witness Ashley. The trial court concluded that $128.81 was appellant's proper monthly pay for the periods in question, so that he was in fact overpaid $1.17 a month, or $123.26 in all. A credit of that amount was allowed to appellee in determining the total balance due to appellant. We find no error in that determination.

The second matter raised by appellant's fifth point concerns his salary between October 15, 1931 and March 15, 1933. During that period he was stationed at Durkee, Oregon, as pumper. His salary as pumper

was on the basis of a ten-hour day, from 9 a.m. to 7 p.m. In addition to that work he was required to watch engines tied up at that station, between 10 p.m. and 6 a.m. Until 1936 appellant made no claim for compensation for that engine watching. He now claims to be entitled to time-and-a-half overtime pay for eight hours a night for that work, for the 507 nights involved, or 4,056 hours in all. The records of the company show that during that period and between the hours of 10 p.m. and 6 a.m. engines were only standing at Durkee for 3258 hours in all. Appellant contends that since he was on call and required to be available for the full eight hours a night he should be paid for the full time. Appellee denies that he is entitled to any pay for that work, because his monthly salary as a pumper was to cover all services rendered, and that in any event he should not be paid for engine watching during hours when no engine was in fact at Durkee to be watched. The settlement agreement reached with the Union allowed appellant $1,806.27 for engine watching; that is, for 3258 hours at a rate of one-and-a-half for overtime, but does not disclose the base rate used in arriving at the amount of $1806.27, although it can be mathematically determined as 37 cents per hour base rate and 55 cents per hour for overtime rate. The trial court held that the settlement was not binding on appellant, but allowed him the same amount ($1806.27) on the ground that it represented a proper quantum meruit allowance for the work, there being no contract provision to cover it.

We find no justification for the trial court's conclusion that the situation is wholly beyond the scope of appellant's employment contract and requires compensation on a quantum meruit basis. The working agreement under which appellant was employed provided what work his salary should cover, how it should be adjusted if his hours were increased or two kinds of work performed. It is apparent that these provisions were intended to be comprehensive, and hence exclusive. We find no basis for holding that there was any intent to pay compensation, otherwise than as provided by the agreement, for work done under the agreement. Recovery, if any, must be under the terms of the agreement.

The parties tried the issues before the Commissioner and also the trial court under pretrial order which stated that the Railroad Company admitted that the employee was entitled to time-and-a-half for overtime of 3258 hours for his services as engine watcher during this period. While the appellant claims more hours of service and larger pay per hour than found by the conferees or the Commissioner, or the Court, the allowance of the trial court must be measured in the light of the admissions of the Railroad Company that the defendant is entitled to time-and-a-half for this period which he put in as an engine watcher.

The appellee agrees that the correct rate of compensation for the month is $128.81, as found by the court. The appellee attempts to support the compensation allowed by the court on a quantum meruit basis and argues that the "agreement does not provide for overtime", and, consequently, that additional compensation can only be allowed for the reasonable value of the services rendered by the appellant.

 In view of the concession of the Railroad Company that the appellant is entitled to time-and-a-half for the period served as engine watcher, we must look to the contract under which the parties were operating to determine the compensation to be paid for such overtime. As to the number of hours thus served, the court found that the employee was entitled only to compensation as engine watcher during the period when there was an engine at Durkee to be watched, and this period the court found to be 3258 hours. The court thus resolves this conflict in testimony in favor of the Railroad Company and its decision is conclusive on appeal. It remains to consider the compensation to be paid for this service under the contract.

 The appellant claims that under section (24) of Article 5 of the contract he is entitled to 68 cents per hour, plus 34 cents for overtime; that is, $1.02 per hour. Consequently, he claims for 4,056 hours $4,137.12.

Both sides refer to Article 5, section (13) as the appropriate rule applicable to pumpers and engine watchers.[3]

---

[3] This rule is as follows: "(13) Except as otherwise provided in this section, positions not requiring continuous manual labor such as track, bridge and highway crossing watchmen, signalmen at railway noninterlocked crossings, lampmen, engine

This rule, Article 5, section (13), provides for increased or decreased monthly rate where additional hours of service are required. The monthly rate computed under this rule will be time-and-a-half for 8 hours per day, or $154.58 per month, in addition to the amount paid as pumper, of $128.81 per month. The period during which this double service continued was 16½ months, which would make the additional compensation $2,550.57 under Article 5, section (13). If we deal with the problem on the basis of the number of hours served and following section (24), which is relied upon by the appellant, we will get a rate of 63 cents per hour, plus 50%, or 31 cents, making a total of 94 cents per hour. This would give a total additional compensation of $3,162.52. However, we are satisfied that section (24) of Article 5 does not apply to the services as pumper or engine watcher which are according to section (13) of Article 5 to be paid a monthly rate. As this is an action at law, we do not undertake to fix the amount of $2,550.57, although so far as we can ascertain from the record before us it is the proper amount; for the error indicates the judgment must be reversed and the cause tried anew.

█ The third matter raised by appellant's five point concerns his pay while stationed as a pumper at Durkee between June 14, 1934 and May 16, 1936. During that period his duties included engine watching between 6 a.m. and 6 p.m., in addition to his pumping which was within the same hours. Appellant argues that his monthly salary was based on an eight-hour day, and that he was accordingly entitled to pay for the additional four hours imposed by his twelve-hour assignment at his regular hourly rate for the first two hours and at one and one-half times that rate for the remaining two hours, under the contract

provision for time-and-a-half for hours in excess of ten. The trial court found that appellant's regular assignment was for ten hours, and that his engine watching added only one hour a day of actual work thereto, being limited to a twelve-hour spread but not occupying the whole twelve hours. The finding that the regular assignment was for ten hours is supported by testimony, and was in fact admitted by appellant's counsel at the hearing. Appellant contends that the contract requires the conclusion that he was regularly assigned to an eight-hour shift only; but we do not consider the contract so unambiguous as to require a holding that the court's finding was clearly erroneous. The court concluded that appellant was entitled to overtime pay at one and one-half times his regular rate, for one hour a day, between June 13, 1934 and November 1, 1935. On the latter date a new contract took effect, which was replaced by another contract on December 1, 1935. Under both the latter, the court held, appellant was paid a flat monthly salary for all services rendered. For the time prior to November 1, 1935, the court allowed him $290.42, which it found to be the amount allowed by the settlement agreement and the amount to time-and-a-half for one hour a day. In fact the settlement allowed $296.77. There was no finding as to the total number of hours of extra time worked. We are thus unable to ascertain from the record whether $296.77 or $290.42 would be the correct allowance. We, therefore, sustain the finding of the trial court. Appellant has not clearly shown that it was an inadequate allowance under the contract for the period up to November 1, 1935, and it is, therefore, approved.

█ Appellant argues before us that he was entitled to a similar allowance from November 1, 1935, to May 16, 1936. Appellee opposes this on the ground that un-

---

watchmen at isolated points, and pumpers, will be paid a monthly rate to cover all services rendered. This monthly rate shall be based on the present hours. If present assigned hours are increased or decreased the monthly rate shall be adjusted pro rata as the hours of service in the new assignment bear to the hours of service in the present assignment except that hours above ten (10) either in new or present assignment shall be counted as one and one-half in making adjustments. Nothing herein shall be construed to permit the reduction of hours for the employees covered by this section below eight (8) hours per day for

six (6) days per week. The wages for new positions shall be in conformity with the wages for positions of similar kind, class and hours of service where created.

"Exceptions to the foregoing paragraph shall be made for individual positions at busy crossings or other places requiring continuous alertness and application."

The appellee says: "Article 5, section (13) [of the contract] is the pumpers' special rule. They work entirely under that rule and are not covered by other rules of the agreement. And their monthly rate of pay covers all services rendered."

der the contracts in effect during that period a flat salary was provided for all work performed. It is by no means clear from the record that appellant's contention regarding this period was presented to the trial court; at least the court made no findings and drew no conclusions regarding it, and appellant's specifications of error do not refer to it. In that state of the record we cannot consider the matter.

Appellant's sixth point is argued by him before us, but since he expressly abandoned it at the trial it is no longer an issue in the case.

■ Appellant's seventh point concerns loss of seniority and time when he was, he asserts, wrongfully removed from his position from June 1 to September 16, 1936. There was evidence that appellant's work watching engines had been unsatisfactory, and for that reason the combined job of pumper and engine watcher at Durkee was taken from the Maintenance of Way Department, in which appellant was, and given to the Mechanical Department, and appellant was notified that exercise of his seniority rights as pumper would have to be at one of two other designated stations. Appellant, instead of going to one of the other stations, remained out on leave of absence until September 16, 1936, when he was allowed to return to Durkee as pumper, but he did no engine watching thereafter. Appellant contends that he was removed from service upon a charge of inefficiency, and that his reinstatement demonstrated that he had been cleared of the charge. Hence, he claims to be entitled to pay for the period of suspension, under the following provision of the working agreement:

"If the charge against the employee is not sustained, it shall be stricken from the record. If by reason of such unsustained charge the employee has been removed from position held, reinstatement will be made and payment allowed for the assigned working hours actually lost, while out of the service of the company, at not less than the rate of pay of position formerly held or for the difference in rate of pay earned, if in the service."

It does not appear that any "charge" was made against appellant within the meaning of the rule; there was merely a determination that his work could be handled to better advantage through another department. Moreover, his subsequent reinstatement as pumper at Durkee, without further work watching engines, could scarcely be said to clear him of the only "charge" suggested, that he was not an efficient engine watcher. Although appellant could have continued as a pumper at either of two other stations, he instead applied for a leave of absence, which was granted. The record sustains the trial court's finding that nothing is due to appellant under this point.

■ Appellant's eighth point concerns his pay from November 20, 1936 to January 15, 1937, during which period he was stationed as a pumper at Durkee, Oregon. He was assigned during that period to work from 6 a.m. to noon and from 2 to 6 p.m. His contention is that the working agreement then in effect did not permit such division of his working day, and that he must in consequence be paid for a twelve-hour day, from 6 a.m. to 6 p.m., two hours of which will be at time-and-a-half. He relies on Rule 16(a):

"Where a meal period is allowed it will be between the ending of the fourth hour and the beginning of the seventh hour after starting work, and unless acceptable to a majority of the employees affected, the meal period shall not be less than thirty minutes or more than one hour."

Appellee relies on Rule 27(d):

"Pumping Plant Operators and Pumpers. The monthly rates shown below cover all services rendered in connection with assignments as the service requirements may necessitate at the points indicated.

"1—Pumping Plant Operators: * * * Durkee, Ore. $125.00."

Appellant argues that the foregoing is inconsistent with Rule 13(a), "Except as provided in section (b) of this rule, and rule 27(c) eight consecutive hours' work, exclusive of meal period, shall constitute a day." However, since under Rule 27(d), supra, appellant was not being paid by the day, no occasion appears for applying Rule 13(a). That is to say, the definition of a working day is irrelevant in the case of appellant who received a flat monthly salary for all services performed within the month.

Appellant's lunch period did not conform to the requirements of Rule 16(a), supra; but assuming that rule to be applicable to appellant, we find nothing in the agreement to make its violation a subject for additional compensation. Rule 16(b) provides: "If the meal period is not afforded within the allowed or agreed time limit and is worked, the meal period shall be paid for at

pro rata rate * * *." This is no help to appellant, since his monthly salary, being for all services rendered, covered those rendered within the prescribed lunch periods as well as others.

The trial court found that nothing was due to appellant under this point; its judgment in that regard is correct.

Appellant's ninth and tenth points are not involved on this appeal.

Appellant's eleventh point is that the trial court's award of $500 for attorney fees was inadequate. At the trial the parties stipulated that the trial court might fix the fee; appellant has shown no reason why he should be relieved of the effect of that stipulation. There was no abuse of discretion in fixing the amount at $500.

Appellant's twelfth point is that he should be allowed interest on the amounts found to be due to him. The Special Master found that appellant was not entitled to interest under Oregon law because all claims upon which recovery was allowed to him were unliquidated. The trial court denied appellant interest without indicating its reasons for so doing.

Appellant claims it was error to refuse to allow him interest upon the various amounts claimed by him. While the trial court did not give its reasons for disallowing interest, its decision would seem to be in accordance with the rule disallowing interest upon quantum meruit recovery based upon the reasonable value of services. As the case must be reversed for other reasons we will leave the question of interest to the determination of the trial court.

Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

