**WASHINGTON STATE BOWLING PRO-
PRIETORS ASSOCIATION, Inc., a
corporation, et al., Appellants,**

v.

**PACIFIC LANES, INC., a corporation,
Appellee.**

No. 20134.

United States Court of Appeals
Ninth Circuit.

Feb. 2, 1966.

Rehearing Denied March 20, 1966.

Samuel W. Block, Kenneth J. Burns, Jr., Raymond, Mayer, Jenner & Block, Chicago, Ill., T. Patrick Corbett, C. R. Lonergan, Jr., Corbett, Siderius & Lonergan, Seattle, Wash., Richard H. Wels, Moss, Wels & Marcus, New York City, for appellants.

William L. Dwyer, George L. Grader, Culp, Dwyer & Guterson, Seattle, Wash., for appellee.

Before BARNES, KOELSCH and BROWNING, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from a final decision of the United States District Court for the Western District of Washington. The district court had jurisdiction pursuant to 15 U.S.C. §§ 15, 26, and 28 U.S.C. § 1337. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

This appeal arises from the final decision of the district court, entered upon the verdict of a jury that defendants (appellants here) were guilty of violations of sections 1 and 2 of the Sherman Act with respect to what might be called "organized bowling", which had injured plaintiff (appellee here) in the amount of $35,000. The final order of the district court trebled these damages to $105,000 and allowed $22,500 as attorney fees.

Appellee is the owner-operator of a bowling establishment located in Tacoma, Washington. Appellants are a number of other bowling establishments in Tacoma and their owners, and the state and local trade associations of bowling proprietors in which they are members. In the original complaint the national bowling proprietors association (Bowling Proprietors Association of America, Inc.) was named as a defendant, but service as to it was quashed, and it was thereafter named as a coconspirator but not a party.

The original complaint of December 7, 1961, alleged violations of both the Sherman and Clayton Acts. The Clayton Act allegations were withdrawn before submission to the jury and are not in issue on this appeal. The Sherman Act allegations charged that the defendants were engaged in an unlawful combination and conspiracy extending throughout the United States with the purpose of restraining and monopolizing trade and commerce. The specific unlawful conduct of appellants in furtherance of this combination, as framed by the pre-trial order, is summarized by appellee as follows (Appellee's Brief, pp. 3–4):

"That the said combination and conspiracy have consisted of a continuing agreement and concert of action by and between the defendants, and other parties, the substantial terms of which have been that the defendants agree:

"1. to conduct, sponsor and sanction bowling tournaments so as to make them open only to those persons who restrict, or who agree to restrict, their league bowling and tournament bowling entirely to establishments which are members of the three bowling proprietors associations, rejecting and declaring ineligible for the tournaments any bowler who does, or who has done, any organized bowling in an establishment not belonging to the association. These restrictions have been carried out by the adoption and enforcement of so · called 'eligibility rules'

* * * The intended and actual effect of the said agreements, rules and practices has been and is to deprive non-member establishments of the patronage of persons who wish to engage in organized bowling, to enforce a boycott against non-member establishments, and thereby to suppress competition and monopolize the bowling industry.

"2. To limit and restrict the number and size of bowling establishments by coercing and dissuading others from building or expanding such establishments, and by soliciting suppliers and manufacturers of bowling equipment, and other persons, not to deal with such persons * * *.

"3. To fix and stabilize, insofar as possible, the prices charges [sic] for bowling, and to refrain from competing for the patronage of bowlers except as against non-member establishments.

"4. To regulate and control throughout the United States, including Western Washington, the number of bowling establishments, the size of bowling establishments, and the conditions under which bowling may be carried on, all for the purpose of monopolizing and eliminating competition in the bowling industry. * * * *"

At the trial appellee relied primarily on proof of the existence and effect of the tournament eligibility rules maintained and enforced by the various bowling proprietors associations, and of the "over-building committee" activities of the Bowling Proprietors Association of America (BPAA) and Washington State Bowling Proprietors Association (WSB PA). Appellee alleged damages to its business of $50,000 and introduced proof thereof, as well as evidence tending to show that the conduct of appellants had had a substantial effect on interstate commerce. At the close of plaintiff's case, defendants moved for a directed verdict on the grounds that the plaintiff's evidence did not substantiate that there

was a restraint on *interstate* commerce. The district court denied the motion with respect to the alleged violations of the antitrust laws by virtue of the eligibility rule, and reserved ruling with respect to the "overbuilding" element. The motion was renewed at the close of all evidence and denied.

In instructing the jury, the district court cautioned that the appellee had not proved that it had suffered any damage by reason of the "overbuilding" committees, and that no damages could be awarded on the basis of that evidence, but that that evidence should be considered to determine the presence or absence of a conspiracy. The district court then submitted the case to the jury with special interrogatories. The jury answered these interrogatories by finding that all defendants had conspired to restrain trade in violation of section 1 of the Sherman Act; that all defendants had conspired to or attempted to monopolize commerce in violation of section 2 of the Sherman Act; that defendants' unlawful acts had substantially affected the interstate commerce portion of plaintiff's business and that the unlawful acts also substantially affected other interstate commerce; and that defendants' violations had caused loss to plaintiff's business in the amount of $35,000. (C.T. 219–226)

After the verdict was announced defendants moved for judgment n. o. v., or for a new trial, which motions were denied in a memorandum decision filed March 9, 1965. Judgment was entered on the verdict consisting of treble damages plus $22,500 in attorney fees and costs. This appeal followed. In this court, attorneys for appellee filed a "Motion for Assessment of Additional Attorney Fees on Antitrust Appeal," asking this court to award them $8,670.75 in the event of affirmance for work done in defending the judgment on appeal. No opposition to this motion was filed by appellants.

We consider *seriatim* the issues raised by appellants.

## I—*The Boycott Instruction*

Appellants contend that the district court erred in charging the jury with regard to the eligibility rule, in that the district court instructed that the rule was a group boycott and, therefore, a per se violation. Appellants contend that the rule is not a "commercial boycott" and that only "commercial boycotts" can be per se illegal. Appellants further contend that the error in instructing the jury was compounded by the failure of the district court to give two balancing instructions requested by appellants (Nos. 23 and 27), and that the erroneous boycott instructions vitiate the verdict and judgment under section 2 of the Sherman Act, as well as section 1 where the eligibility rule was the primary basis of the violation. Appellee asserts that the objection to the boycott instruction was not properly raised and has therefore been waived.

■ a. Appellee's contention regarding *waiver* of the boycott instructions is untenable. At a conference on instructions before the conclusion of the trial appellants' attorney did state that the instructions as proposed were correct statements of the law but were inapplicable and inappropriate in this case for a number of reasons, including the reasons that the eligibility rule was not a commercial boycott, that the eligibility rule was legitimate action by the bowling proprietors associations for the purpose of regulating their own tournaments, that there was a fact question for the jury as to whether the rule was a reasonable regulation of competition or an illegal boycott, and that the instructions would be improper if not balanced by appellants' instructions setting forth their theory of the rule and letting the jury decide which interpretation to adopt. (R.T. 2016–2033) Before the charge was given the district judge told counsel that they might rely on the exceptions made in conference if they wished to do so. (R.T. 2726) Appellants renewed most of these same objections after the charge had been delivered by the district judge. (R.T. 2084–5) While

these exceptions were perhaps not stated as artfully or formally as they might have been, we believe that they were sufficiently adequate to preserve the issue on appeal. (Rule 46, Federal Rules of Civil Procedure.)

b. The group boycott instructions given did define a group boycott as a per se violation of the Sherman Act, and left no room for operation of the rule of reason. (R. T. 2773–4) The district judge did *not*, however, instruct the jury to find that the eligibility rule was a group boycott and hence illegal per se, but rather defined what constituted a group boycott in general terms, and left it to the jury to determine whether or not the eligibility rule constituted such a boycott. The primary question for determination on this issue is therefore whether this was an appropriate situation for the use of a per se rule of illegality, or whether the jury should have been instructed that if appellants' purpose in having the eligibility rule was reasonable then it did not violate the Sherman Act, even though it constituted a group boycott.

■ Group boycotts are per se violations of the Sherman Act. Klor's v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), and cases cited therein. Appellants argue that this rule applies only to *commercial* boycotts, meaning presumably boycotts directed against "other traders" as in the *Klor's* case, supra. This contention is refuted by the language of recent decisions of the Supreme Court and of this court [1] in cases which held refusals of manufacturers or dealers to deal with customers to be per se violations of the Sherman Act.

Appellants' objections, both preceding and following the charge to the jury, went to the necessity for instructions that appellants had the right to place restrictions on their business which were designed to prevent cheating such as "sandbagging" or other abuses, even though such restrictions might incidentally restrict commerce. Presumably such instructions would have indicated that the restrictions were designed to promote the sport of bowling rather than to constitute a boycott. We have reviewed the record in regard to these objections and find ourselves in agreement with the statements of the trial judge in his memorandum decision (C.T. 237–42). He held that the evidence in the case did not justify or support such proposed instructions. Even assuming that abuses in the sport existed, it has been established since the case of Fashion Originators' Guild of America v. Federal Trade Commission, 312 U.S. 457, 668, 61 S.Ct. 703, 85 L.Ed. 949 (1941) that such circumstances do not justify a private association passing regulations to deal with the problem when their effect is to restrain or regulate interstate commerce.

■ Appellants further urge that the district court erred in not giving the boycott instructions which were proposed by appellants. The trial judge answered this contention in his "Memorandum Decision" (C.T. 236–45) in a thorough manner, and we agree with his conclusions. The trial court is under no obligation to give faulty instructions, 88 C. J.S. Trial § 408 (1955), and the record shows that appellants made no effort to submit correct instructions after the district court had pointed out faults in the refused instructions. While

1. Radiant Burners v. Peoples Gas, Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L. Ed.2d 358 (1961) ; Jerrold Electronics Corp. v. Wescoast Broadcasting Co., 341 F.2d 653 (9th Cir. 1965). As the Supreme Court said in *Radiant Burners*, supra (364 U.S. at 660, 81 S.Ct. at 367) :
"By § 1, Congress has made illegal: 'Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States

* * *.' Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, [31 S.Ct. 502, 515, 55 L.Ed. 619]. Congress having thus prescribed the criteria of the prohibitions, the courts may not expand them. Therefore, to state a claim upon which relief can be granted under that section, allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all the law requires."

we do not suggest a trial court is under no obligation to charge on a material issue after requested to do so, even if the instructions as proposed are faulty, we cannot find that this omission, in light of the evidence in this case and the authorities cited above, was such a failure.

c. We find no merit in appellants' contention that "The erroneous boycott instructions also vitiate the verdict and judgment under section 2". As we have discussed, supra, no error was committed in the giving of the boycott instructions. Secondly, appellants again in this argument incorrectly state that the district court instructed the jury that the eligibility rule was a group boycott. Again we say, the district court did not so instruct the jury but rather gave a general definitional instruction on group boycotts and left it to the jury to determine whether or not the eligibility rule was in fact a group boycott. Finally, appellants' contention that an attempt to monopolize requires proof of specific intent, and that there was no such proof in this case, is without merit. The court's instructions contained a specific and proper charge on specific intent. (R.T. 2768) The evidence in this record is ample to support a specific finding of intent to monopolize. The jury so found when it answered "Yes" to the special interrogatory on the section 2 violation. In any event, appellants' failure to raise the issue of inadequacy of proof or inadequacy of the charge as to specific intent below requires us to hold that such grounds have been waived. We find no error in the verdict as to liability on the section 2 ground.

## II—Damages

a. Appellants contend that the award of damages is excessive in that recovery was permitted for injury alleged to have occurred through the 1963–1964 bowling season, rather than being limited to recovery to the date of the filing of the complaint. Appellee counters that although appellants are correct in stating that appellee did not file an amendment or supplement to the complaint to include damages up to the time of trial, appellants have waived this objection by not having raised it below, and by preparing to try and trying the case on the theory that damages through the 1963–1964 season were in issue.

Appellants are correct in asserting that this court has held that in the case of damages resulting from a continuing conspiracy or from continuing acts in violation of the Sherman Act, recovery is limited to damages suffered to the date of filing the complaint, and that damages after that date are properly raised by a new complaint, or the filing of a supplemental complaint. Flintkote Company v. Lysfjord, 246 F.2d 368, 394 (9th Cir. 1957), and cf. Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656, 673 (9th Cir. 1963). This should have here occurred. However, appellee's waiver argument receives substantial support in the record. The pre-trial order, dated December 11, 1964 (C.T. 160–187), nowhere specifically defines the period for which damages should be considered, but it does include agreed facts and allegations of both sides extending past the date of the filing of the complaint. This included the $50,000 damages, allegedly suffered "to date," i. e., 1964, the date of the pre-trial order.[2]

Appellee, under the practice current in the district court, was entitled to rely on the issues defined by the *agreed* pre-trial order setting forth such issues. If such a stipulated definition of issues works a manifest injustice to one party or the other, it can be modified at the trial. (Rule 16, Fed.R.Civ.P.) Fowler v. Crown-Zellerbach Corp., 163 F.2d 773 (9th Cir. 1947); Frank v. International Canadian Corporation, 308 F.2d 520, 528 (9th Cir. 1962); and cf. Rogers v. Union Pac. R. Co., 145 F.2d 119, 123 (9th Cir. 1944).

2. Cf. references to specific language and four record references on pages 39–40 of Appellee's Brief.

■ No party was here taken by surprise. Appellants' expert accountant witnesses testified to their examination of records extending into the 1963–64 season (C.T. 266–69). Written exhibits dealing with post-complaint damages were prepared by and introduced on behalf of the appellants. When appellants questioned the cut-off date at the start of trial, the trial judge ordered that legal memoranda be submitted to him. Before he had ruled on the issue, appellants' counsel suggested a delay in the ruling (R.T. 853–4); and evidence of "subsequent damage" was introduced. Finally, the jury was instructed, without objection from defendants-appellants (R.T. 2804–10), that the critical dates were October 15, 1960, and the end of the 1963–64 bowling season.[3]    (R.T. 2782)

Nowhere do appellants show they were unprepared to meet the issue of damages incurred subsequent to the filing date. The burden is on them to do so. The case was tried on the theory such damages were material.

The motion for new trial was presented and argued on the theory damages subsequent to the filing date were material.

■ We need not condone the inexactness of the pre-trial statement, but we are required to interpret it with liber-

ality to save the cause of action. Johnson v. Geffen, 111 U.S.App.D.C. 1, 294 F.2d 197, 199 (1960). It is now too late to urge that the case should have been tried on a different theory.

■ We recognize that appellants did not comply with Rule 75, Federal Rules of Civil Procedure, nor with Rule 17(6) of this court, because they did not include this point in their statement of points on appeal. However, the cases cited by appellee to support the proposition that this court therefore need not consider the point on appeal for that reason, are distinguishable.[4]

■ We, therefore, prefer to rely on the lack of surprise to appellants, and the trial theory pursued below, rather than a technical failure of appellants to include this point in their points on appeal.

b.    Appellants likewise urge there was insufficient evidence to support the award of damages.

We note that this claim was not raised at the trial—there was no motion for a directed verdict at the close of the evidence. Cf. Cellino v. United States, 276 F.2d 941 (9th Cir. 1960).

■ We refer to our language with respect to damages in antitrust

---

3. It is only fair to note that appellants did offer instructions limiting damages to pre-filing damages, which instructions were refused. Appellants urge that a request for an instruction is in substance an objection to the charge as given. It may well be (Wright v. Farm Journal, Inc., 158 F.2d 976, 978 (2d Cir. 1947), particularly when it expresses a differing theory of law—but it need not necessarily be, particularly where it relies on facts.

4. Western Nat. Ins. Co. v. Le Clare, 163 F.2d 337 (9th Cir. 1947), the court noted that three points which had been argued had not been stated in appellants' statement of points and therefore need not be considered. However, the court then stated, that it had considered the points anyhow. It does not appear whether or not proper objection had been made in the trial court. In State Farm Mut. Auto.

Ins. Co. v. Porter, 186 F.2d 834, 52 A.L.R.2d 499 (9th Cir. 1950), the court noted that the point argued had not been included in the statement of points and that the instructions objected to and the objections had not even been included in the printed record. Nevertheless, the court stated that it had examined the unprinted portion of the record, and dismissed the objection only when it found that no exception had been taken in the trial court and that the objection had in fact been waived there specifically. In Watson v. Button, 235 F.2d 235 (9th Cir. 1956), the court refused to consider an issue on appeal which had not been stated in the statement of points to be relied on, but qualified the refusal with the fact that the pertinent portion of the record had not been designated by the appellants and was not before the court and therefore could not be considered on that ground.

cases. Once a jury finds plaintiff was injured by defendant's unlawful acts, it may estimate the amount of damages proximately flowing from the illegal act. In showing the *fact* of damage, plaintiff is charged with a higher quantum of proof than in proving the *amount* of damage. Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946) ; Flintkote Company v. Lysfjord, supra. As to amount, exact certainty or any precise formula is not required. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927) ; Rangen, Inc. v. Sterling Nelson & Sons, 351 F.2d 851, 856 (9th Cir. 1965). Circumstantial evidence is valid, and a comparison of profits "before and after" is valid, and of some evidentiary value, though not conclusive.

The special jury verdict specifically found on the fact of damage, i. e., financial loss (C.T. 223). There was direct evidence of the amount of damage. Appellee lost the play of five "Leagues." It was estimated this loss was $17,611.31 in three years (Ex. 259). Additional losses were "estimated," to an alleged total of over $50,000. The jury awarded $35,000.

■ It is true appellee's estimates of damages were disputed and vigorously attacked by appellants on cross-examination. Such estimates, say appellants, were "unsupported 'mere interested guesses,'" (Reply Brf. p. 25) and "only $7,104.49 of plaintiff's alleged damage may be said to find support in the evidence" (Reply Brf. p. 26). Such characterization cannot wipe out the evidence; it merely emphasizes that a factual question was presented to the jury for its determination which we are without power to change. Nor can we say the verdict is grossly excessive, or such as to shock our conscience.

### III—*Effect of Eligibility Rule on Interstate Commerce*

Both parties agree that the question of whether a conspiracy restrains or affects interstate commerce so as to invoke federal antitrust jurisdiction is a question for the jury under proper instructions. Sunkist Growers, Inc. v. Winckler & Smith Citrus Prod. Co., 284 F.2d 1 (9th Cir. 1960), reversed on other grounds, 370 U.S. 19, 82 S.Ct. 1130, 8 L. Ed.2d 305, rehearing denied 370 U.S. 965, 82 S.Ct. 1577, 8 L.Ed.2d 834 (1962) ; Marks Food Corp. v. Barbara Ann Baking Co., 274 F.2d 934 (9th Cir. 1960). In this case the district court submitted two special interrogatories to the jury on the question of interstate commerce; one asking whether the acts of the defendants had substantially affected the interstate commerce portion *of the plaintiff's business* in an amount that was more than insignificant (Int. No. 3; C. T. 223), and another asking whether the acts of defendants substantially affected interstate commerce and that the amount of commerce affected was not insignificant (Int. No. 4; C.T. 223). A "yes" answer to either would be adequate to sustain a finding of jurisdiction in the district court for the whole case. The jury answered "yes" to both interrogatories.

■ The appellants attack the finding of jurisdiction on two grounds, the first of which is that the evidence was not legally sufficient to support the verdict that the eligibility rule had the requisite effect upon interstate commerce. Cf., Eiger, Commerce Element in Federal Antitrust Litigation, 25 Fed.B.J. 282, 293 (1965). The same contention of appellants was dealt with by the district court in its memorandum decision (C.T. 232–36). In summarizing the evidence offered which may be said to show an effect of the eligibility rule, the district judge pointed out that a reduced capacity to participate in tournaments and to draw out of state bowlers; a reduction of the interstate rental payments; and a reduction in the amount of incidental purchases in interstate commerce of bowling supplies, followed from the eligibility rule. The district court also distinguished the case of Lieberthal v. North Country Lanes, Inc., 221 F.Supp.

685 (S.D.N.Y.1963), affirmed 332 F.2d 269 (2d Cir. 1964), relied upon by appellants. We agree with its treatment of the *Lieberthal* case, and note particularly that in that case interstate effects arising from wholly intrastate restraints on a business that had not yet come into operation were alleged, whereas in the present case directly interstate aspects such as failure to draw bowlers from Canada, loss of ability to conduct tournaments with interstate attendance and decline in continuing interstate transactions (such as rental payments and sale of goods from an established and thriving business) were alleged and shown resulting from the eligibility rule. On the basis of such evidence we believe that the issue of the interstate effect of the eligibility rule was properly submitted to the jury and that its verdict concludes the jurisdiction question.

Nor can we agree that the testimony of Mr. Grant as to the decline in participation in Washington tournaments by Canadian bowlers was inadmissible. The testimony offered by Grant was definitely material to the issues in the case, and even if some parts of his testimony relating to the records of the Vancouver, British Columbia, City Bowling Association should have been excluded because hearsay, that part of his testimony based on personal knowledge was still sufficient to support a finding of an interstate effect caused by the eligibility rules. Thus any error in admitting hearsay testimony by Grant was harmless error.

### IV—*Other Interstate Aspects of the Conspiracy*

◼ Appellants' second contention with respect to interstate commerce is that there is no legally sufficient evidence that the other aspects of the alleged conspiracy, aside from the eligibility rule, affected commerce. Appellee did not contend that it had suffered damages by reason of the price fixing activities or the "overbuilding" activities of the proprietors' associations, but that

evidence was admitted to establish the existence of a conspiracy to restrain trade and to monopolize, and to demonstrate that the conspiracy was interstate in nature. Appellants do not allege that the evidence was improperly admitted for these purposes, but rather argue that it was legally insufficient to show that a connection existed between the various programs (i. e., eligibility rule, overbuilding, and price fixing) and thus did not show that the conspiracy was interstate in nature. With this contention we cannot agree.

The record in this case is replete with testimony and documentary exhibits showing that the national proprietors association (to which all of the local proprietors belonged) as well as the two local proprietors associations (WSBPA and POBPA) had each, at various times involved in this suit, discussed with others, and acted in an attempt to implement, programs to raise and stabilize prices, and to keep out new competitors. The record also establishes that much of the leadership in each of these programs came from the national association (BPAA). Appellee alleged a national conspiracy to monopolize and restrain trade in the bowling industry, including Western Washington. We believe that this was a reasonable inference, which the jury was free to draw, that all of the various programs (eligibility rule, price fixing, over-building committees) were part of the same conspiracy to that end. The parties involved were the same in each case, and the time was simultaneous. Appellants repeatedly attempt to divorce their local associations from the national association which gave leadership to the conspiracy which the jury found to exist, but provide no proof that the local associations were not part of a national conspiracy and an attempt to monopolize and restrain. They were all members of the national which, though it was not a party defendant since service as to it had been quashed, was alleged to be one of the conspirators. We need

not decide whether their participation in such a national conspiracy independently serves to establish the interstate nature of the transactions involved, and by itself, provides jurisdiction of the district court in this proceeding. We hold that the price-fixing and over-building activities independently satisfy the interstate requirements for jurisdiction when, as here, the eligibility rule was another facet of the same conspiracy. The evidence supports the jury's verdict on this point.

In regard to price-fixing, appellants urge that neither the testimony of Hoffman or Stevenson (the owners of Pacific Lanes) should be accorded any weight on price-fixing because of the doctrine of *in pari delicto*. We express no opinion as to whether this doctrine is applicable in antitrust actions, which the appellee denies, because we find it to be unavailing in any event. The theory of plaintiff as to price-fixing was supported by other evidence even without the testimony of Hoffman and Stevenson (see citations to record in Appellee's Brief, pp. 65–6). The appellee did not rely on the price-fixing for proof of damages. In any event the appellants failed to raise the point at the trial and hence must be deemed to have waived it. For this court to recognize this exception *sua sponte* at this stage of the proceedings, as urged by appellants, in a situation where it did not form the basis for the recovery of damages and was amply supported in the record by other testimony, would open a loop-hole for negligent or crafty counsel to always prevail on appeal.

### V—Attorney Fees on Appeal

Attorneys for appellee have filed a motion with this court for allowance of additional attorney fees in connection with this appeal in the event that the decision below is affirmed. This motion has not been opposed. $22,500 was allowed below. We decline to assess additional attorney fees.

The judgment is affirmed.