Herbert WIGGINS, Administrator of the Estate of James Wiggins

v.

CITY OF PHILADELPHIA

v.

PHILADELPHIA TRANSPORTATION CO.

Civ. A. No. 27035.

United States District Court
E. D. Pennsylvania.
April 29, 1963.

Louis Samuel Fine, Philadelphia, Pa., for plaintiff.

Edward G. Bauer, Jr., City Solicitor, by Vincent C. Veldorale, Asst. City Solicitor, Philadelphia, Pa., for defendant.

WOOD, District Judge.

On October 11, 1958, the deceased was employed by the Philadelphia Transportation Company (P.T.C.) as a conductor on car No. 553 of a Market-Frankford elevated train. An explosion occurred on this particular car when a short circuit occurred in its main switch. The deceased was burned and subsequently died from these injuries on November 17, 1958.

This action was brought against the City of Philadelphia (City) which owned and leased these elevated trains to the P.T.C. under a lease dated May 5, 1922 and renewed on July 1, 1957. No action was brought against the P.T.C. because its liability was limited to Workmen's Compensation. The City filed a third-party action against the P.T.C. under Fed.R.Civ.P. 14(a) upon the theory that its lease provided for indemnity or contribution by the P.T.C. of any sums awarded to the plaintiff in this action.

Under the terms of the lease, the P.T.C. maintained, operated and controlled the particular car in question. The City reserved the right to inspect the cars to protect its *financial interest* in the equipment subject to the lease. It is the plaintiff's contention that the City was negligent in supplying car No. 553 with knowledge that the clips holding the main switch were loose thereby making it possible for the blade to fall from the clips causing the explosion.[1]

There was no evidence that these clips were loose on car No. 553 at the time of the accident in 1958. The Court excluded the testimony of Mr. Januich, a city inspector on this point when it became apparent that he could not recollect with reasonable certainty that these clips were tightened within a reasonable time *prior* to the accident (NT259). His best recollection was prior to 1956 (NT259). Where the identity of a particular car is known, evidence of its physical condition prior to the occur-

---

1. A careful review of the record fails to disclose to us now, as was the case at trial, any reliable evidence upon which a jury could find what did cause this explosion.

rence is limited to a reasonable time. Kalbach v. Phila. & Reading Ry., 277 Pa. 307, 121 A. 204 (1923). If the time is remote it is incumbent upon the plaintiff to show that no change of condition occurred prior to the accident. Wigmore on Evidence, § 456 at p. 463 (3d ed. 1940); Johns v. Pennsylvania R.R. Co., 226 Pa. 319, 75 A. 408, 28 L.R.A.,N.S., 591 (1909). It could not be concluded that there was any causal connection between the condition of car No. 553 prior to 1956 and the explosion on October 11, 1958.

█ The sole responsibility of inspecting and repairing car No. 553 for safety of operation rested in the obligations of the P.T.C. under the lease.[2] Electrical inspections, called "B" inspections, were conducted every three months by the P.T.C. These inspections included the main switch which was cleaned and reset if the clips were loose. The City never assumed this responsibility for the P.T.C. during the term of the lease. Consequently, no duty existed on the City's part toward the deceased.

As previously stated, the City made periodic inspections of the elevated cars to protect its *financial interest* in the property and insure that the terms of the lease were being complied with by the P.T.C. There was a total lack of proof that the City had any notice of the alleged defective switch in car No. 553 when the lease was renewed on July 1, 1957. There was testimony that these cars made five trips daily between terminals, a distance of 14.2 miles each way.

Car No. 553 had been so traveling for 36 years prior to the accident without mishap. Consequently, there was no reason for the City to foresee that this explosion would be caused in whole or in part because of any defect in the switch, assuming, of course, that in fact the switch did cause the explosion resulting in the injuries to decedent. Whether or not the switch did in fact cause the explosion and, if so, to what extent is only theory. There is no reliable factual proof as to what did occur on the car in question. It is basically a res ipsa loquitur case (see Footnote 1).

We, therefore, conclude that the plaintiff has failed to prove either notice of a defect in car No. 553 or a duty on the part of the City to take precautions against this unexplained explosion to protect the plaintiff's deceased from injury.

█ The plaintiff objected to the participation of the third-party defendant, P.T.C., in the trial of this case because the P.T.C. never answered the plaintiff's complaint and was not an adverse party. Fed.R.Civ.P. 14(a) specifically provides that:

"* * * The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim."

This sentence, the Advisory Committee stated, "protects the impleaded third-party defendant where the third-party plaintiff fails or neglects to assert a proper defense to the plaintiff's action." 3.

2. The applicable portions of the lease are set out as follows:

"*Fourth.* The Company shall and will at all times during the continuance of this lease, operate the railway and other property hereby demised so that in connection with its own system of railways it will furnish safe and reasonably adequate accommodations to the public. It shall keep the buildings, equipment and personal property demised hereunder insured to at least such proportionate extent as it shall keep insured its own like property and in the event of loss or damage by fire it shall apply the insurance to the replacement or restoration of the property destroyed or injured, and to such extent as the same is not insured shall replace or repair the same out of the current operating revenues of the combined properties. Furthermore, it will maintain and renew, out of earnings received from the transportation of passengers on the system of street railways of which the demised premises are a part, whatever may be lost or worn out, and items so replaced shall become the property of the City, subject, however, to the Company's right hereunder as lessee."

244

Moore's Federal Practice, Par. 1413, p. 433.

Factually, the P.T.C. was adverse to the plaintiff since any liability proven against the City could have subjected the P.T.C. to indemnity or contribution under the lease. The plaintiff's objection is without merit.

The plaintiff's motions to take off the directed verdict and for a new trial are denied.