340 F.2d 481
 RHOADES, INCORPORATED, Appellant,
v.
UNITED AIR LINES, INC. v. PENNSYLVANIA RAILROAD COMPANY.
RHOADES, INCORPORATED
v.
UNITED AIR LINES, INC., Appellant, v. PENNSYLVANIA RAILROAD COMPANY.
 Nos. 14780, 14781.
 United States Court of Appeals Third Circuit.
 Argued Sept. 22, 1964.
Decided Jan. 22, 1965.
 
 Gilbert E. Morcroft, Pittsburgh, Pa., for Rhoades, Inc.
 H. A. Robinson, Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for United Air Lines, Inc.
 Aloysius F. Mahler, Pittsburgh, Pa., for Pennsylvania R. Co.
 Before HASTIE and FORMAN, Circuit Judges, and KIRKPATRICK, District judge.
 FORMAN, Circuit Judge.
 
 
 1
 Rhoades, Incorporated (hereinafter Rhoades), was the owner of a device known as an airboat[1] which it had demonstrated at Los Angeles and was desirous of exhibiting in Pittsburgh, Pennsylvania. Accordingly, it arranged with United Air Lines, Inc. (hereinafter United), to transport the airboat consigned to itself, via air freight from Los Angeles to Pittsburgh. United was without facilities to transport the airboat beyond Cleveland, Ohio. After its arrival there United arranged with the Pennsylvania Railroad Company (hereinafter Pennsylvania) for its carriage to its destination. On delivery to Rhoades at Pittsburgh the airboat allegedly was received in a destroyed state. In this diversity action Rhoades seeks damages against United in the sum of $15,000.[2]
 
 
 2
 United impleaded Pennsylvania as a third party defendant. It admitted that the airboat was received by it in good condition and asserted that it was transferred to Pennsylvania in the same state. Pennsylvania denied liability and claimed that all the damage occurred prior to its taking over the shipment at Cleveland.
 
 
 3
 Although the parties stipulated that the airboat was so badly damaged during its transportation that it was rendered valueless, the amount of the recovery for the admitted damage was in issue. United urged that under the facts its liability was limited to $1,080, the limitation on the value of the item under the tariffs it had filed. Rhoades contended that United's liability was not limited and insisted that it was entitled to $15,000 in damages.
 
 
 4
 The jury was presented with, and answered, four special interrogatories as follows:
 
 
 5
 'Interrogatory No. 1. Did the defendant, United Air Lines, at Los Angeles, California accept plaintiff, Rhoades, Inc., airboat for shipment to Pittsburgh, Pennsylvania without at that time and place, issuing a receipt, air bill or bill of lading to the plaintiff for such airboat shipment? The answer, yes.
 
 
 6
 'Interrogatory No. 2. State the amount of total damage caused to the airboat while in transit from Los Angeles, California to Irwin, Pennsylvania. $7,500.
 
 
 7
 'Interrogatory No. 3. State the amount of money damage the plaintiff Rhoades, Inc. is entitled to from the defendant, United Air Lines. $7,500.
 
 
 8
 'Interrogatory No. 4. State the amount of money damage the defendant and third party plaintiff, United Air Lines, is entitled to, if any, from the third party defendant, Pennsylvania Railroad Company. Answer: None.'
 
 
 9
 Judgment was entered in favor of Rhoades against United in the sum of $7,500 and of no cause for action in favor of Pennsylvania in the third-party action brought by United. Rhoades filed a motion under Federal Rule of Civil Procedure 59 to alter or amend the judgment, and in the alternative, for a new trial on the question of damages. United moved for a new trial on all issues as to both Rhoades and Pennsylvania. All motions were denied by the District Court.[3] This case is now presented to us on the cross appeals of both Rhoades and United.
 
 
 10
 -- I--
 
 
 11
 Rhoades' motion either to alter or amend the judgment or for a new trial as to damages is its reaction to what it considered a grossly insufficient verdict of $7,500. The merit in its position rests on the disposition of two issues:
 
 
 12
 (1) Whether United's counsel, in the course of conducting the trial, made a binding admission that if United were to be found not to have successfully limited its liability, then a verdict in favor of Rhoades for $15,750 should be rendered?
 
 
 13
 (2) Whether both United's and Pennsylvania's failure to controvert Rhoades' evidence of value limited the jury to a finding of the value of the airboat in the amount offered by Rhoades?
 
 
 14
 As to the question of United's admission, during the course of its counsel's opening to the jury following the conclusion of the presentation of Rhoades' case, he stated:
 
 
 15
 '* * * and the net result of that is that you will find for the plaintiff either for what is now supposed to be the declared value of $15,750 or for the limited amount recoverable under the tariffs filed and then you will determine which of these carriers was the cause of the damage and I think that is what his honor has in mind for you to do.'
 
 
 16
 Relying on Oscanyan v. Arms Co.,[4] Rhoades goes to great length to demonstrate that an admission of counsel in the course of trial is binding on his client, a point of law upon which there is little dispute.
 
 
 17
 Rhoades, however, assumes that the statement of United's counsel does, in fact, constitute an admission, an assumption which is in no way buttressed by Rhoades. Though finding a binding admission by counsel in Oscanyan, the United States Supreme Court carefully prefaced its conclusion with the following remarks:
 
 
 18
 'The power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced. The question in either case must be whether the facts upon which it is called to instruct the jury be clearly established. If a doubt exists as to the statement of counsel, the court will withhold its directions, as where the evidence is conflicting and leave the matter to the determination of the jury.'[5]
 
 
 19
 And in applying the law to the Oscanyan facts, the Supreme Court found:
 
 
 20
 'Here there were no unguarded expressions used, nor any ambiguous statements made. * * * He dwelt upon and reiterated the statement of the fact which constituted the ground of the court's action in directing a verdict for the defendant. * * *'[6]
 
 
 21
 Taking United's alleged admission in its opening address, we find it far from unambiguous. To be sure, counsel for United might have meant to express his resolution of the alternatives presented by the damage question in the manner in which Rhoades would ascribe such resolution to him. But that is not clear from counsel's statement to the jury. The clause, 'for what is now supposed to be,' sufficiently clouds counsel's clarity of expression so as to place the entire statement outside the bounds of an admission.
 
 
 22
 Two other references to the record also seem to reinforce our view that United, in its opening to the jury, did not accept unequivocally $15,750 as the value of the airboat. In objecting to the introduction of any testimony in behalf of Rhoades as to the value of the airboat, United argued that such testimony should not be received for 'under the theory of (Rhoades') case, the value would be $15,750.'[7] At that point, United did not accept $15,750 as the value of the airboat. It merely indicated that under Rhoades' own theory, its declared value of $15,750 would limit Rhoades in its introduction of evidence as to value. Furthermore, reference to the pre-trial proceedings[8] indicates that United's counsel explicitly stated that he did not have the slightest idea what the airboat was worth. Nor did the parties arrive at any formal stipulation as to its value. Under these circumstances, we do not find that United was willing to accept $15,750 as the airboat's value, and our view that we should not find the opening statement of United's counsel so unambiguous as to bind United to an admission of the value of the airboat is, therefore, reinforced.
 
 
 23
 Rhoades' second argument offered in this appeal is that the verdict of $7,500 was speculative in light of the uncontroverted evidence offered that the value of the airboat was $15,750, the claim being voluntarily limited, however, to $15,000. While it is true that $15,000 was the lowest figure Rhoades presented to the jury, the jury also was told by Rhoades' witnesses[9] that: the value of the airboat was between $15,000 and $30,000; the value was $15,750; and that the value was $17,400. Though United did not offer expert witness testimony on the value of the airboat, it did extensively examine Rhoades' own witnesses as to the material and construction of the device. Photographs of the airboat were also presented for jury consideration. Rhoades' witnesses, in testifying as to its value, stated that facts and figures existed upon which the conclusions as to value were based, but no such evidence was introduced. Indeed, the only evidence as to value was opinion testimony by Rhoades' witnesses, both of whom had direct interests in the corporate enterprise.
 
 
 24
 All the above factors could have led the jury to have evaluated the testimony so as to determine upon a verdict of $7,500. Support is abundant for the propriety of their so doing. In Sartor v. Arkansas Natural Gas Corp.,[10] the United States Supreme Court ruled that summary judgment should not have been granted as to the value of gas royalties, for the evidence of value, though uncontradicted, was based solely on opinions of experts who were officers of the defendant corporation or who had similar interests. The Supreme Court stated:
 
 
 25
 "If they have any probative effect, it is that of expressions of opinion by men familiar with the gas business and its opportunities for profit. But plainly opinions thus offered, even if entitled to some weight, have no such conclusive force that there is error of law in refusing to follow them. * * *' * * * The rule has been stated 'that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony.' * * * '* * * The jury, even if such testimony be uncontradicted, may exercise their independent judgment.' * * * '* * * The mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact.' * * *'[11]
 
 
 26
 Such an approach towards uncontradicted evidence is firmly rooted in the policy of the law of evidence. As Wigmore has pointed out, 'the mere assertion of any witness does not of itself need to be believed, even though he is unimpeached in any manner; because to require such belief would be to give a quantitative and impersonal measure to testimony.'[12] This Court has also in Wooley v. Great Atlantic & Pacific Tea Company,[13] enunciated the approach which we now choose to govern our judgment as to the propriety of the jury's damage verdict in the instant case. We ruled in Wooley that the trier of fact, whether the issue be one of an excessive or inadequate verdict, is at liberty within the bounds of reason to reject entirely the uncontradicted testimony of a witness which does not convince the trier of its merit. Because there are a number of factors mentioned above which the jury might have rationally weighed in reaching its decision, we hold that the jury's rejection of the uncontradicted testimony falls within the bounds of reason.
 
 II
 
 27
 United's motion for a new trial as to Rhoades was based on the jury's failure to find a limited liability of $1,080 as the sum and substance of United's responsibility; as to Pennsylvania, United argues that the jury's exoneration of Pennsylvania, rather than United, from liability was both against the weight of the evidence and influenced by the failure to charge the jury on a presumption allegedly attaching to United. We find that the District Court's denial of United's motion as to both Rhoades and Pennsylvania was quite proper.
 
 
 28
 A. Suffice it to say, United has little ground to argue that the evidence clearly demonstrated that a jury finding of limited liability under United's tariffs was required. For such liability to be limited, United would have had to successfully communicate its terms to Rhoades through delivery of a receipt air bill or bill of lading. Without such a communication, Rhoades' oral evidence that United agreed to insure the airboat would serve as a basis upon which the jury could find that United had not successfully limited its liability. United failed to show that the person to whom it had allegedly transferred an air bill prior to the airboat's reaching its destination was Rhoades' agent, and its second issued air bill only reached Rhoades after Rhoades had received its damaged airboat. These circumstances provided a sufficient basis for the jury finding that no written contract limiting United's liability had been entered into by Rhoades.
 
 
 29
 B. We are further convinced that the arrangement for shipment between United and Pennsylvania was one between United, a shipper, and Pennsylvania, a carrier, Rhoades being the consignee. The existence of a railroad bill of lading representing the foregoing transaction, the fact that United sued Pennsylvania on this document, and the absence of a through route arrangement between United and Pennsylvania from Los Angeles to Pittsburgh, indicate that no connecting carrier relationship existed.[14] Pennsylvania's agreement to ship was separate and distinct from United's undertaking with Rhoades. Therefore, the trial judge properly refused to charge that a presumption arose that the damage occurred while the shipment was in the hands of the terminal carrier, for no presumption attaches unless a connecting carrier relationship is demonstrated.
 
 
 30
 United's contention that the jury's finding in favor of Pennsylvania was against the weight of the evidence is also clearly without merit. Pennsylvania offered many witnesses who gave detailed evidence that when the airboat was received from United at Cleveland, it was damaged. The fact that such damage was not noted on Pennsylvania's records at the time of the airboat's receipt is, of course, evidential against Pennsylvania. United would lead us to believe, however, that such an omission on the part of Pennsylvania is conclusive as to its liability. As there conceivably are alternative reasons why Pennsylvania's records would be silent as to the damage, employee carelessness for one, such an omission cannot constitute evidence conclusive on the jury in this lawsuit. Pennsylvania's conduct in this respect was a factor to be weighed by the jury along with all the other evidence. That the jury found that the damage to the airboat occurred prior to its receipt by Pennsylvania was wholly within its province.
 
 
 31
 On the basis of the above discussion of the issues, we find no error in the District Court's denial of Rhoades' and United's post-trial motions. Its judgment is affirmed.
 
 
 
 [1]
 Briefly, the airboat has been described as 'a bicycle like device,' nine feet in diameter, four feet high, weighing 185 pounds. It works on the principle of positive air pressure which lifts the device off the ground. Two shells are placed together leaving a small opening around their contacting edges. A motor impels air into the shells' hollow, which escapes with great force through the opening around the edges, in turn creating the positive air pressure. The airboat was not in production and was used solely for publicity and demonstration purposes. It had no market value
 
 
 [2]
 The ad damnum clause of Rhoades' complaint demanded $15,000. Rhoades offered evidence, however, to show that it declared a value on the airboat to United of $15,750 for insurance purposes
 
 
 [3]
 Rhoades, Incorporated v. United Air Lines, Inc., 224 F.Supp. 341 (W.D.Pa.1963)
 
 
 [4]
 103 U.S. 261, 26 L.Ed. 539 (1880)
 
 
 [5]
 Id. at 263, 26 L.Ed. 539
 
 
 [6]
 Id. at 264, 26 L.Ed. 539
 
 
 [7]
 Transcript, pp. 70-71
 
 
 [8]
 Pretrial transcript, p. 20
 
 
 [9]
 The witnesses for Rhoades were Charles Radcliffe Rhoades III, President of the Company, and Charles Radcliffe Rhoades, Vice President
 
 
 [10]
 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1943)
 
 
 [11]
 Id. at 627-28, 64 S.Ct. at 729
 
 
 [12]
 7 Wigmore on Evidence 2034, at 260-61 (3d ed. 1940)
 
 
 [13]
 281 F.2d 78 (3 Cir. 1960)
 
 
 [14]
 United has relied on 49 U.S.C. 20(11), a portion of the Interstate Commerce Act, as support for its proposition that when a connecting carrier relationship exists and there is doubt as to where the damage to the shipment was inflicted, the burden is on the terminal carrier to demonstrate its freedom from negligence, a presumption arising that it was the terminal carrier that was negligent