Paul J. GLICK, Appellee,

v.

WHITE MOTOR COMPANY, Appellant,

v.

NORTH AMERICAN ROCKWELL CORP., (Third Party Defendant).

No. 19509.

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1971.

Decided April 20, 1972.

T. E. Byrne, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., Mark D. Alspach, Thomas E. Byrne, III, John C. Detweiler, Philadelphia, Pa., for appellant White Motor Co.

Richard M. Goodman, Goodman, Eden, Robb, Millender, Goodman & Bedrosian, Detroit, Mich., James A. Tuck, Detroit, Mich., Frank E. Roda, Newcomer, Roda & Morgan, Lancaster, Pa., for appellee Paul J. Glick.

Before HASTIE, ALDISERT * and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

On July 30, 1964, at 3:30 A.M. appellee Paul J. Glick, an over-the-road truck operator, was involved in a highway accident with an automobile on Highway 230 by-pass near Lancaster, Pennsylvania. Glick suffered substantial injuries resulting in total and permanent paralysis from the waist downward, and was hospitalized from the date of the accident until February 12, 1965.

The complaint was filed in the United States District Court for the Eastern District of Michigan on August 26, 1965. An order was entered on May 18, 1966 transferring this action to the United States District Court for the Eastern District of Pennsylvania. On October 5, 1966 Rockwell-Standard Corp.[1] was joined as third-party defendant. The trial resulted in a verdict on November 11, 1969 for Glick and against White, in the sum of $307,400, and in favor of White against Rockwell for the full amount of the jury's award to the plaintiff.

Motions for judgment N.O.V. and new trial were made by White and Rockwell and denied. On December 16, 1969, plaintiff filed a motion under F.R.Civ.P. 59(e) requesting the court to amend the judgment to include interest at the rate of 5% per annum from the date of the institution of the suit pursuant to a Michigan statute.[2] On October 23, 1970, the court entered final judgment, amending the judgment of November 11, 1969 to include pre-judgment interest in the amount of $64,659.52. Glick's earlier motion to assess counsel fees as part of the judgment against White was denied, D.C., 317 F.Supp. 42.

Notice of appeal was filed by White on October 26, 1970.[3] Rockwell entered into an agreement with White which resulted in the complete indemnification of White, compromise and settlement of all counsel fees and expenses due White

---

* Judge Aldisert heard the argument of this appeal but did not participate in the decision.

1. Rockwell-Standard later acquired the name of North American Rockwell Corp. and the name of the third party defendant was amended by stipulation dated November 16, 1970.

2. The Michigan statute reads as follows: "Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 5% per year unless the judgment is rendered on a written instrument having a higher rate of interest in which case interest shall be computed at the rate specified in the instrument if such rate was legal at the time the instrument was executed. In no case shall the rate exceed 7% per year after the date judgment is entered. In the discretion of the judge, if a bona fide written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered and the offer of settlement is substantially identical or substantially more favorable to the prevailing party than the judgment, then no interest shall be allowed beyond the date the written offer of settlement is made." Mich. Compiled Laws Annotated § 600.-6013, as amended, effective July 12, 1966.

3. On October 23, 1970, F. Hastings Griffin withdrew his appearance as attorney for White, and T. E. Byrne, Rockwell's attorney at the trial, entered his appearance for White Motor Co. Docket Entry No. 100.

from Rockwell, and the assumption by Rockwell of the entire prosecution of this appeal for and in the name of White. In addition, White was given a complete hold harmless agreement against any judgment arising out of this case.

The theory of plaintiff's suit was based on an alleged defect in a truck spring manufactured by Rockwell and installed by White in the truck driven by Glick. After the accident, it was discovered that the right front spring on the truck which joins the suspension system to the truck body had broken at the spring "eye"—the place where the spring is curled to receive a rod or bushing from the cab to make the joint between truck spring and truck body. Abundant expert testimony was introduced to determine whether the spring eye was broken as a result of fatigue failure due to certain gouge marks allegedly impressed on it during manufacture, or whether the break was caused by the force of the collision. The testimony of Mr. Louis J. Jelsch, chief suspension engineer for Rockwell, stated the conclusion that had the spring broken on the highway, prior to the collision, the truck would have veered out of control to the right.[4]

The threshold issue on appeal is whether Rockwell is estopped from disputing the authenticity of certain sections of trial exhibits cut from the Rockwell spring which White accepted as genuine. At trial, Rockwell questioned the authentication and tracing of these items and asked the trial judge to exclude any testimony based on these exhibits.[5] The trial judge allowed the exhibits and the testimony related to it and overruled Rockwell's objections.

Appellant White took the position at all relevant times that the exhibits were genuine. In his closing argument counsel for White expressly requested the jury to find that the spring as manufactured by Rockwell, sold to White and mounted on the right front of the Glick truck was defective because of the tool or gouge marks impressed into the steel at the time of manufacture.[6]

---

4. Appellee's Appendix, p. 123b.

5. With the jury excused, the court solicited the views of both Rockwell and White on the authentication of the truck spring exhibits. Rockwell objected to the exhibits, but appellant White defended their genuineness:

"Q. (the Court): What are your views at this point?

A. (Mr. Byrne—Rockwell): *My view, sir, is I don't think we have met the chain.* English had testified he gave to Billings, this man has said he got them from Siebert. Now, there is an awful gap there it seems to me.

Q. (the Court): Do you have another view?

A. (Mr. Griffin—Appellant, White): *I have another view, but it is not based on something I think that has been done with the evidence yet.* I would say it is right in this courtroom, but I don't think it has been done by the Plaintiff. I think probably on this Mr. Byrne is right.

*In my view, if that spring there is the one that came off our truck, he has a chain.*

Q. (the Court): You don't think he has proved the spring came off the truck?

A. (Mr. Griffin): *I think he probably has done that* if you believe the testimony of Millstein, I took it off the truck and I got it back. If you believe all that, I think, there is enough identification. If you believe that, if you put together also, that is here, those samples came off the spring.

Now, I think that is clear as day because I just sat down and fitted all the parts together, but it hadn't been done by anybody.

Q. (the Court): You mean fitted them together mechanically or fitted them—

A. (Mr. Griffin): I played jigsaw, *and I don't think there is any other way they could have come—I am satisfied.* I have myself doubted all along the $64 question, "Are these really the ones from our spring or are these some other fancy samples that have been brought into the case.

*I personally don't think those samples could have come anywhere but from that spring because all the fracture faces fit.* It is just that simple . . . ." (58b–59b) (Emphasis added)

6. Appellant's Appendix, pp. 148–149b. While arguing that the spring eye was

■ It has been held that judicial admissions are binding for the purpose of the case in which the admissions are made including appeals, State Farm Mutual Auto Ins. Co. v. Worthington, 405 F.2d 683 (8th Cir. 1968), and that an admission of counsel during the course of trial is binding on his client. Rhoades, Inc. v. United Air Lines, Inc., 340 F.2d 481 (3d Cir. 1965). However, to be binding, judicial admissions must be unequivocal. Oscanyan v. Arms Co., 103 U.S. 261, 26 L.Ed. 539 (1880), The Doyle, 105 F.2d 113 (3d Cir. 1939), Rhoades, Inc. v. United Air Lines, Inc., *supra*. The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case. New Amsterdam Casualty Co. v. Waller, 323 F.2d 20 (4th Cir. 1963), cert. denied, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964).

■ The application of the above principles compels the conclusion that the plain and unequivocal acceptance at trial of the authenticity of the spring exhibits constitutes a binding admission by White. Rockwell argues, however, that an exception should be made to the usual preclusion cases involving a single party in order that it [Rockwell] may be afforded complete defense protection under F.R.Civ.P. 14.[7]

■ Rockwell oversimplifies the issue. We are not confronted merely with the failure of White to raise points at the trial level. White took a definite position on the authentication of the truck spring sections, and benefited from its conduct by the jury's plain finding that the truck spring was rendered defective by the tool or gouge marks.

In Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3d Cir. 1953), Judge Hastie carefully drew a rule of "estoppel" on the circumscribed canvass of the "particular facts and circumstances" of each case:

"The rule we apply here need be and is no broader than this: A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate."

Cf. Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F.2d 541 (5th Cir. 1968).

Appellant argues that the preclusion rule is not applicable to the factual situation here, relying upon the decision of this court in Humble Oil and Refining Co. v. Philadelphia Ship Main Co., 444 F.2d 727 (3d Cir. 1971). *Humble Oil*

---

defective because of the tool or gouge marks, White took no position on the question of the metallurgical soundness of the spring.

7. F.R.Civ.P. 14 provides, inter alia:
(a) " * * * The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. * * *"
A fair reading of Rule 14(a) indicates clearly that since a third party defendant [Rockwell] may be liable to the original defendant [White], the third party

defendant must be permitted to take part in the trial and conduct examination and cross-examination as the rules of evidence permit. In the instant case Rockwell did fully participate in the trial. Cf. Wiggins v. City of Philadelphia, 216 F.Supp. 241 (E.D.Pa.1963) aff'd. 331 F.2d 521 (3d Cir. 1964). Here, White is the appellant and the appeal is being prosecuted for White by the attorneys for Rockwell. Rockwell having voluntarily appealed in White's behalf cannot inherit any greater rights than White would have had. This conclusion does not detract from the benefits of third party practice and is not inconsistent with the inherent policy of Rule 14(a), Fed.R.Civ.P.

dealt primarily with the applicability of the "vouching-in"[8] process whereby a shipowner's tender of defense in a longshoreman's suit was sought to be used as a basis for liability against a stevedore in a later indemnification suit. A longshoreman brought suit against a shipowner for injuries sustained in the course of his employment. The shipowner tendered defense of the action to the stevedore. The latter refused to accept the tender. He was not impleaded in the original action. Judgment was recovered against the shipowner who instituted an action in admiralty against the stevedore seeking indemnification for the damages awarded in the original action. The district court granted summary judgment to the shipowner predicated on the determination that the seven special interrogatories posed to the jury in the original action resolved all general issues of material fact, and that the stevedore was collaterally estopped from litigating those facts. We reversed, refusing to bind the stevedore to an election not to defend, where the facts at the time of the tender of defense did not demonstrate ' "that liability [would] eventually fall upon the indemnitor," thereby placing him under a duty to defend.'

Rockwell's reliance on *Humble Oil* is misplaced. The implication of *Humble Oil* is that, had the stevedore been impleaded, it would have been given sufficient notice of its potential liability, and its continued failure to enter a defense would have made the findings of fact binding on it for the purpose of indemnification. The court's concern was with the marginal notice provided by the "vouching-in" process, and the unfairness of using it as a basis for applying the principle of collateral estoppel in a subsequent suit.

No such concern is warranted in this case. Rockwell deliberately elected to prosecute the appeal in White's name. The fact that White's judgment against Rockwell was recovered in the same suit which resulted in favor of appellee, Glick, does not make *Scarano* inapplicable. Rockwell argues that, even had it chosen to appeal from the judgment recovered by White, it would still have been bound by the principal verdict.[9] Rockwell had the right to raise objections to the evidence at trial—and did so. It had the right to file all trial and post-trial motions and did so. And Rockwell had the right and opportunity to preserve its own trial position by taking an appeal from the judgment which was rendered against it, in favor of White. As to that judgment Rockwell would have had to answer only for its own conduct and its own admissions.

8. "Vouching-in" is a common-law device by which a defendant notifies another: (a) of the pendency of the suit against him; (b) that if liability is found, the defendant will look to the vouchee for indemnity; (c) that the notice constitutes the formal tender of the right to defend the action; and (d) that if the vouchee refuses to defend, it will be bound in any subsequent litigation between them to the factual determinations necessary to the original judgment. 444 F.2d at 735, note 14.

9. Rockwell's emphasis on the binding effect on it of Glick's judgment against White contemplates a res judicata or collateral estoppel situation where issues previously and finally decided are sought to be relitigated in a subsequent suit involving the same cause of action and parties or the same issues as the prior suit. Canaan Products, Inc. v. Edward Don & Co., 388 F.2d 540 (7th Cir. 1968). We fail to see the applicability of these principles to the question of Rockwell's rights on appeal from White's judgment against it. Rockwell portrays White as having the best of two worlds. "If Rockwell's evidence defeated plaintiff's claim, White won the verdict. If it did not and the plaintiff prevailed, White obtained indemnity, including court costs of defense." It appears that Rockwell put White in a "third world." Rockwell not only indemnified White, and assumed the prosecution of this appeal on behalf of White but voluntarily gave White a complete hold harmless agreement against any judgment arising out of this case. Rockwell took no steps to avoid being bound by the principal judgment. Even when White specifically asked the jury to find that the Rockwell spring was defective, Rockwell did and said nothing to avoid its indemnity liability.

We find the statement of appellee on this issue to be well taken:

"But now having assumed White's party and judgment identity so as to completely protect White, Rockwell bridles at the record White made at trial. Thus, Rockwell's 'dilemma' on this appeal results from no impairment of its 'complete defense protection.' It results from a conscious and deliberate choice Rockwell made after judgment to protect the White Motor Company, come what might. But in doing this, it cannot wash the record so as to nullify the effects of White's trial conduct and admissions. These remain in the record, * * *, regardless of who prosecutes the appeal in White's name." [10]

In short, Rockwell chose to stand in the shoes of the principal defendant, White. It's right on appeal can be no greater than those of White. It aligned itself with White against Glick with the proverbial axe aimed at the plaintiff's judgment against the primary defendant [White]. It cannot now be heard to complain that it made a bad alliance.

We conclude that the rule of *Scarano* operates to bar the appellant from raising the issue of authenticity on this appeal.

Appellant challenges the action of the trial court in amending the judgment to include pre-judgment interest.

■ It does not dispute the trial court's reliance on the Michigan conflict of law rules.[11] It argues rather that the court erroneously applied those rules in allowing pre-judgment interest under the Michigan statute, for the benefit of a Pennsylvania resident suing upon a Pennsylvania tort cause of action.

We find the district court's award of pre-judgment interest to be proper. Resort to the conflict laws of Michigan was correct. Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205 (3d Cir. 1970); cert. denied 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Lynch v. Electro Refractories and Abrasives Corp., 408 F.2d 363 (6th Cir. 1969).[12] The trial judge was entrusted with the function of applying the decisional law of Michigan defining the scope and effect of the pre-judgment interest statute.[13] His determination comports with the holdings of the Michigan courts. Ballog v. Knight Newspapers Co., 381 Mich. 527, 164 N.W.2d 19 (1969); Cosby v. Pool, 194 N.W.2d 142 (Court of Appeals, Mich.1971), leave to appeal to Michigan Sup.Ct. denied 1/13/72; Swarthout v. Beard, 190 N.W.2d 373, 380 (Court of Appeals of Mich. 1971).[13A]

■ Error is alleged in the district court's entertainment of appellee's motion, which was originally filed under F.R.C.P. 59(e), as a Rule 60(a) motion.

10. Appellee's supplemental brief, pp. 6–7.

11. Since the District Court sat as the District Court of Michigan, its reliance on that state's conflict of law rules was sound. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

12. Where defendant seeks a change of venue under 28 U.S.C. 1404(a), the transferee federal District Court *must* apply the State law that would have been applied if there had been no change of venue. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). (Emphasis supplied)

13. The Michigan statute requires that interest allowed on every money judgment recovered in a civil action be calculated from "the date of filing the complaint" (see footnote 2). The original statute provided for interest calculated from the date of judgment.

13A. In Wilkinson v. Eastern Airlines, Inc., (Civil Action No. 29330, Mar. 7, 1971, E. D.Mich.), the court applied Michigan law to allow pre-judgment interest on a New York cause of action, holding that "while the question of liability is determined by the law of the place of the tort, the question of interest is determined by the law of the forum." Contra: Ryan v. Ford Motor Co., 334 F.Supp. 674 (E.D.Mich., S.D. 1971), where Montana law (lex loci) was applied in a wrongful death action, instead of Michigan law (lex fori), producing the result that interest was paid from the date of judgment only. The court found an absence of controlling authority in the law of Michigan. We find no such lack of authority and disagree with the result reach in *Ryan*.

This rule provides that clerical mistakes in a judgment may be corrected at any time. The court held that, since the Michigan pre-judgment interest statute requires the allowance of interest from the date of filing suit as a matter of right, the omission of pre-judgment interest was a "clerical mistake" which could be corrected by motion under Rule 60(a). We agree. The addition of pre-judgment interest under the Michigan statute is merely a ministerial act which cannt be denied through mere inadvertence, regardless of whether the error goes undiscovered for a period exceeding ten days. See In re Merry Queen Transfer Corp., 266 F.Supp. 605 (E.D. N.Y.); Gilroy v. Erie-Lackawanna Railroad Co., 44 F.R.D. 3 (S.D.N.Y.1968). Cf. Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F.2d 541 (5th Cir. 1968), where the court dealt with the issue of pre-judgment interest as damages.[14]

Finally, we summarily dispose of appellant's remaining assignments of error going to the trial court's ruling on cross-examination of plaintiff regarding two written statements and third party defendant's attempt to prove the manner of failure of another steel spring. The two statements were taken from Glick by insurance investigators while Glick was hospitalized in the intensive care unit under heavy sedation. Glick testified that he remembered absolutely nothing about the statements, but that the signature did look like his.[15] The court refused to allow these statements to be used to impeach Glick on cross-examination until they were sufficiently authenticated. Appellant was given the right to recall Glick for cross-examination after authentication by the scriveners. Rockwell called two insurance investigators as witnesses and both statements were read to the jury. However, Glick was never recalled and confronted with these statements. The record indicates that the jury was adequately instructed on the weight and consideration to be given the statements.[16] We perceive no harmful or prejudicial error in the trial judge's rulings.

Evidence was proffered by defendant regarding another spring eye which was shown to appellee's expert witness, Henry Fuchs. The record reveals a serious disagreement as to whether Mr. Fuchs did in fact identify the condition of this trial exhibit.[17] Appellant contended that Mr. Fuchs had described the break in the spring eye as having been caused by fatigue failure, and attempted to introduce evidence to show that the test sample failed by the application of one massive test load. The court excluded this evidence as collateral and because a proper foundation had not been laid.[18]

Experimental evidence is admissible so long as it is relevant and probative, and such evidence has probative value if the conditions of the experiment are identical with or similar to the conditions of the transactions in litigation. Crown Cork and Seal Co. v. Morton Pharmaceuticals, Inc., 417 F.2d

14. The rationale for adding pre-verdict interest is discussed in Peter Kiewit Sons' Co. v. Summit Construction Co., 422 F.2d 242 (8th Cir. 1969). In United States v. Stuart, 392 F.2d 60, 62, (3d Cir. 1968), the primary concern of Rule 60(a) was stated to be with mistakes which do not really attack the party's fundamental right to the judgment at the time it was entered.

15. Appellant's Appendix, pp. 24a, 33a, 46–47a.

16. The court had completed charging the jury when a discussion took place at side bar. As a result, the judge supplemented his original instructions. In essence, he told the jury to determine, in the light of all the surrounding circumstances, whether Glick was in possession of his faculties at the time these statements were reduced to writing by the "interrogator" and signed by Glick. If Glick was not in full possession of his faculties they were not to attach any weight to the statements. On the other hand if they found that the statements were made "when he [Glick] was in full possession of his faculties you may treat them [the statements] as substantive evidence."

17. Exhibit DR–10.

18. Appellee's Appendix, p. 126–127b.

921 (6th Cir. 1969). A ruling on the admission or exclusion of experimental evidence in a particular case rests largely in the discretion of the trial judge and his decision must not be overturned on appeal absent a clear showing of an abuse of discretion. Ramseyer v. General Motors Corp., 417 F.2d 859 (8th Cir. 1969); Hopkins v. E. I. Dupont De Nemours & Co., 199 F.2d 930 (3d Cir. 1953). The record indicates that the trial judge exercised sound discretion in refusing to admit the proffered experimental evidence.

The judgment of the district court will be affirmed.