**TREADWAY COMPANIES, INC., et al.,**
**Plaintiffs,**

v.

**BRUNSWICK CORPORATION,**
**Defendant.**

Civ. A. No. 595–66.

United States District Court,
D. New Jersey.

Sept. 17, 1973.

Cole, Geaney & Yamner, Paterson, N. J., Law Firm of Malcolm A. Hoffmann, Malcolm A. Hoffmann, New York City, for plaintiffs.

Stryker, Tams & Dill, Arthur C. Dwyer, Newark, N. J., Mayer, Brown & Platt, Miles G. Seeley, Thomas B. McNeill, Chicago, Ill., for defendant.

## OPINION

WHIPPLE, District Judge:

The trial of this case began for the second time on March 13, 1973 and concluded on May 11, 1973 with the following verdicts being returned:

1. In favor of defendant Brunswick and against plaintiffs Pueblo Bowl-O-Mat, Inc., Holiday Bowl-O-Mat, Inc., Bowl-O-Mat Paramus, Paradise Bowl-O-Mat, Inc., Treadway Companies, Inc. (for losses claimed to have been suffered by the closing of Fort Lauderdale Bowl-O-Mat, Inc.), Treadway Companies, Inc. (for losses claimed to have been suffered by interest charges) and Indianapolis Bowl-O-Mat, Inc., with respect to the claims of monopolization and/or attempted monopolization asserted by them, under 15 U.S.C. § 2.

2. On the so-called "acquisition claims" based on § 7 of the Clayton Act,

against defendant Brunswick and in favor of the following plaintiffs in the following amounts: Holiday Bowl-O-Mat, Inc., $298,800, Bowl-O-Mat Paramus Operations, $1,094,400; Pueblo Bowl-O-Mat, Inc., $964,830.

On May 31, 1973, this Court, having previously trebled the amounts awarded to the plaintiffs on the Section 7 claims pursuant to 15 U.S.C. § 15, entered judgments reflecting the jury verdicts. Within ten days after the entry of said judgments, defendant brought the instant motion pursuant to Fed.R.Civ.P. 50(b) for a judgment notwithstanding the verdict or in the alternative for a new trial. A more detailed statement of facts is not presently necessary; where facts do become operative, the Court will set them out. The grounds for the motion are numerous and will be treated *seriatim.*

## I

■ Motions for a judgment notwithstanding verdict, since they are, by definition, "intrusions upon the province of the jury", must be granted cautiously and sparingly. Rumsey v. Great Atlantic and Pacific Tea Company, 408 F.2d 89, 91 (3rd Cir. 1969). In ruling on the motion, the Court must review the evidence and all reasonable inferences in a light most favorable to the party who prevailed at the trial. Thomas v. E. J. Korvette, Inc., 476 F.2d 471, 474 (3d Cir. 1973); *Rumsey, supra,* at 90 of 408 F.2d; 5A J. Moore, Federal Practice ¶ 50.07[2]. In fact, it is the general rule that such a motion may only be granted where "reasonable minds could reach no other conclusion". Pope v. Holiday Inns, Inc., 464 F.2d 1303, 1306 (5th Cir. 1972); Sotell v. Maritime Overseas, Inc., 474 F.2d 794, 796 (2nd Cir. 1973); Reeves v. Power Tools, Inc., 474 F.2d 375, 380 (6th Cir. 1973). It is the further duty of this Court upon the instant motion to refrain from weighing the evidence and to ignore the credibility of the witnesses. Cole v. Chevron Chemical Co.—Oronite Division, 477 F.2d 361, 367 (5th Cir. 1973). It is upon these procedural guidelines that defendant's motion will be considered.

Defendant's initial argument is that its motion for a directed verdict at the close of plaintiffs' case was improperly denied as a matter of law. The first specific argument under this general heading is that the plaintiffs failed to present any evidence from which the jury could properly conclude that defendant's operation of competing bowling establishments gave rise to any reasonable probability that competition would be lessened or that a monopoly would tend to be created in violation of § 7 of the Clayton Act, 15 U.S.C. § 18.

The crux of the defendant's hypothesis is that the activity in which it engaged cannot be violative of § 7 as a matter of law because that activity had the effect of preserving competition rather than reducing it. Entwined in this proposition are the defendant's subordinate contentions that (a) even if competition could be lessened or a monopoly created by their actions, damages could not, as a matter of law, flow therefrom, and (b) even if damages could flow as a matter of law, none were proven.

■ The only purely legal issue implicit in this theorem, in this Court's view however, is whether a private party can, as a matter of law, recover damages for a § 7 violation. The conceptual difficulty inherent in this question is that the Act speaks in terms such as *"may* be to lessen competition, or to *tend* to create a monopoly". Thus, can a violation caused by a tendency result in damages? The question was laid to rest in Gottesman v. General Motors Corporation, 414 F.2d 956, 960–961 (2nd Cir. 1969), cert. denied, 403 U.S. 911, 91 S.Ct. 2208, 29 L.Ed.2d 689 (1970):

We agree with those authorities cited above that indicate that a violation of Section 7 of the Clayton Act does furnish a basis for a claim for money damages under the broad language of Section 4 of the Act. . . The basis of the pre-trial ruling was that

a Section 7 violation can cause no damage because it establishes only that harm was threatened, not that it occurred. But if the threat ripens into reality we do not see why there can never be a private cause of action for damages.

The legal issue of capacity being answered, the only remaining question is whether the plaintiff carried his burden of proof. As the court stated in *Gottesman*:

If Section 7 is designed to prevent acquisitions that "may" or "tend to" cause specified harm, such an acquisition may either itself directly bring about the harm or make possible acts that do. We do not say that a Section 7 violation must, or even probably will, have that result; but that it may and that plaintiffs should have a chance to prove injury "by reason of" the violation are persuasive propositions.

414 F.2d at 961. The question of whether the plaintiffs proved their damages as a proximate result of the defendant's activities is one for the factfinder, *see* Dailey v. Quality School Plan, Inc., 427 F.2d 1080 (5th Cir. 1970). There was ample evidence adduced at the trial to show how Brunswick's entry into the retail market lessened competition, *see* Reynolds Metals Co. v. F. T. C., 114 U.S.App.D C. 2, 309 F.2d 223 (1962); Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679 (8th Cir. 1966), and this Court views the matter as one where reasonable minds could reach *more* than one conclusion. The instant motion, therefore, cannot be granted on this ground.

The next point pressed by the defendant is that plaintiffs failed to prove that the competing bowling establishments acquired by Brunswick were engaged in interstate commerce as required by § 7. The authority with respect to § 7 is nonexistent, but there are cases dealing with bowling under other sections of the antitrust laws. This authority can, it seems to this Court, be employed in the instant case.

Defendant cites Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2nd Cir. 1964) as supportive of their position. The Court stated in its opinion of defendant's motion for a directed verdict, however, that *Lieberthal* is distinguishable from this .case because the amount of interstate activity proven is greater than that alleged in *Lieberthal* and because the test enunciated in that case was the effect of the activity on interstate commerce.

Additionally, and perhaps more importantly, the jury in this case was specifically instructed that the plaintiffs were required to "prove . . . [f]irst, that the assets acquired by the defendant were acquired from a corporation engaged in interstate commerce." If the jury answers the above question in the affirmative, the jurisdictional issue is concluded, Washington State Bowling Proprietors Association v. Pacific Lanes, Inc., 356 F.2d 371, 380 (9th Cir.), cert. denied, 384 U.S. 963, 86 S.Ct. 1590, 16 L.Ed.2d 674 (1966); Bowl America, Inc. v. Fair Lanes, Inc., 299 F.Supp. 1080, 1090 (D.Md.1969), except to the extent that this Court must examine whether the jury's conclusion was at all possible based on the evidence. As has been stated, there exists sufficient evidence to sustain such a conclusion. The instant motion cannot, therefore, be granted on this basis.

On the same general issue, defendant argues that, as a matter of law, the jury could not have found that two of the establishments acquired by Brunswick, Fair Lanes and Interstate Lanes, were "engaged in commerce" at the time of the acquisition. This is allegedly so because Brunswick purchased the stock of these two companies after their parent company, American International Bowling Corporation (AIBC), had gone into bankruptcy.

As supportive of this contention, defendant cites Danning v. Brunswick Corporation, 466 F.2d 1010 (9th Cir. 1972),

cert. denied, 409 U.S. 1126, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973). *Danning* was a consolidated suit by a trustee in bankruptcy and a shareholder of a competing bowling center against Brunswick. Plaintiff alleged that Brunswick's assumption of the lease of the debtor violated Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act in that defendants "by their lease, conspired to foreclose acquisition of the [debtor] at the trustee's sale by anyone but Brunswick and enhanced Brunswick's monopoly in the bowling business." 466 F.2d at 1012 (footnote omitted).

In affirming the trial court's grant of summary judgment, the Ninth Circuit Court of Appeals stated:

Plaintiffs' claims, as reflected in the complaints, are essentially similar; each is vested upon Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act. In substance the trustee and Levy contend that Malouf and Brunswick, by their lease, conspired to foreclose acquisition of the Matador business at the trustee's sale by anyone but Brunswick and enhanced Brunswick's monopoly in the bowling business.

The basic defect in these contentions, briefly stated, lies in the fact that at the time of the sale the trustee had no business to sell. He had not seen fit nor taken the steps necessary to preserve the business as an integral unit, but had allowed the major components to revert to the creditor-owners.

466 F.2d at 1012 (footnotes omitted). Defendant asserts that the same reasoning applies to the instant case. This Court disagrees. The businesses which were sold in the instant case had been preserved as integral units. Mr. Lieblich testified at the trial that he and other bidders at the bankruptcy sale, assuming they had been successful, would simply have "assumed the debt obligations of [the bowling centers involved] to Brunswick and have met them in the ordinary course of business." [Tr. 878–79]. Thus, it is clear from the testimony that the bidders at the bankruptcy sale in the instant case, unlike those in *Danning*, were purchasing going concerns which were in fact "engaged in commerce."

Defendant's next claim is that plaintiffs introduced no evidence whereby the jury could conclude that it acquired any assets of Belmont Lanes in Pueblo, Colorado or of Dutchess Lanes in Poughkeepsie, New York. Brunswick operated these centers under a lease agreement, defendant contends, and no other property was proven to have changed hands. The instant motion marks the first time that this issue has been raised and it might be plausibly argued that acquisition has been admitted.[1] Furthermore, the jury was instructed that they must find an acquisition in order to find a Section 7 violation; this they did. In this Court's view, that finding is supported by the record.

Defendant's final argument on its motion for judgment notwithstanding ver-

1. Brunswick made the following statement regarding Dutchess Lanes at paragraph 23 of its answer:

. . . defendant entered into possession of the premises of said bowling center pursuant to a lease thereof, and of certain personal property located therein, by the owner of such premises, and at the same time defendant purchased from LEMAR, INC. certain liquor and food supplies and ball boring equipment located on such premises.

Concerning Belmont Lanes, Brunswick stated at paragraph 19 of its answer that it entered into an agreement with the former operator on the condition that "said former operator would turn over to defendant certain other equipment and supplies located in said center." Brunswick also stated in a memorandum dated May 5, 1973 that "Brunswick also bought the assets comprising Belmont Lanes in Pueblo", and that "Brunswick also purchased the assets comprising Dutchess Lanes in Poughkeepsie" (Br. at 10).

An admission by counsel is binding upon his client. *See* Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972); Rhoades, Inc. v. United Air Lines, Inc., 340 F.2d 481, 484 (3d Cir. 1965).

dict is that "the evidence established as a matter of law that each of the [competing] corporations . . . was a failing company and that therefore any acquisitions of their assets or stock were beyond the reach of Section 7 of the Clayton Act." They argue that, because plaintiffs' damage evidence was predicated on the fact that these centers would have gone out of business but for Brunswick's intervention, an admission has been made that the centers were in fact "failing companies". Much more is necessary however, for defendant's neat "Catch-22" proposition to be viable.

■■■■ One asserting the failing company defense must establish not only that the particular company is in irreversible failure but also that the acquisition in question was the sole alternative available. United States v. Greater Buffalo Press, Inc., 402 U.S. 549, 555, 91 S. Ct. 1692, 29 L.Ed.2d 170 (1971). Whether the companies acquired by Brunswick were in fact failing is somewhat doubtful from the record. Furthermore, there is almost no proof as to the "sole alternative" requirement. A defense is a matter of proof for the defendant.

Brunswick also contends that it was the only bidder prepared to purchase all of the assets of AIBC and that that purchase was, therefore, the sole open alternative in order to save that corporation from failure as a matter of law. There were, however, several other bidders at the sale who were prepared to purchase individual establishments. There is no proof in the record, nor has Brunswick made any argument, as to why individual purchases would not present an additional alternative. Additionally, the jury received sufficient instructions on the failing company defense [Tr. 4682–83; 4731–32] and found it inapplicable.

## II

■■■■ Defendant's alternative motion is that a new trial should be granted. Such a motion is directed to the sound discretion of the trial court, Sotell v. Maritime Overseas, Inc., 474 F.2d 794, 796 (2nd Cir. 1973), and should only be granted where the verdict was influenced by partiality or prejudice, or some misconduct or some misconception of the law and the verdict established was therefore a clear instance of wrong decision and a resultant miscarriage of justice. Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc., 466 F.2d 179, 187 (8th Cir. 1972); Andrzejczak v. Calarco, 339 F.Supp. 68, 69 (W.D.Pa.1972).

Several of the arguments marshalled in favor of the motion for a judgment notwithstanding verdict are restated in support of the motion for a new trial, this Court therefore considers its previous remarks sufficient to dispose of them. Included in this category are the following contentions: the Court erred in denying the defendant's motions for directed verdicts at the close of plaintiffs' case; the Court erred in denying defendant's motions for directed verdicts at the close of all the evidence; the verdicts are without foundation or support in the evidence; the verdicts are contrary to the manifest weight of the evidence.

■■■■ Defendant next argues that it was error for this Court to admit evidence illustrating the additional profits which would have been realized by the plaintiffs if the competing centers had not been acquired by Brunswick and had instead gone out of business. Defendant has cited no authority, other than a cross-reference to a prior point, which would render such evidence inadmissible. Plaintiff correctly points out that an estimate of probable profits but for the alleged wrongdoing of a defendant is clearly admissible. William H. Rankin Co. v. Associated Bill Posters of the United States, 42 F.2d 152 (2nd Cir.), cert. denied, 282 U.S. 864, 51 S.Ct. 37, 75 L.Ed. 765 (1930). This being so, defendant's argument as to the admissibility of this evidence is reduced to a combination of a reargument of the viability of the plaintiffs' claims and a questioning of the evidence's weight. The Court

has already decided the former and the latter is no ground for a new trial.

■■■■ Defendant's next argument is that the Court's instruction that two of the acquisitions in question were, as a matter of law, "in a line of commerce" was error. Defendant asserts that such an instruction effectively took the issue of interstate commerce from the jury. Although this Court is convinced of the correctness of these charges, Washington State Bowling Proprietors Association, Inc. v. Pacific Lanes, Inc., 356 F.2d 371 (9th Cir.), cert. denied, 384 U.S. 963, 86 S.Ct. 1590, 16 L.Ed.2d 674 (1966); Bowl America, Inc. v. Fair Lanes, Inc., 299 F.Supp. 1080, 1090 (D. Md.1969), it is nevertheless arguable that they implied that the issue of *interstate* commerce was linked to the question of a line of commerce. It is textbook law, however, that a jury charge must be viewed in its entirety. James v. Continental Insurance Co., 424 F.2d 1064 (3d Cir. 1970); Ely v. Reading Co., 424 F.2d 758 (3d Cir. 1970). The jury in this case was specifically instructed as follows:

> Each of these plaintiffs, to be entitled to prevail on its claim under Section 7 of the Clayton Act, must prove each and all of the following facts:
>
> First, that the assets acquired by the defendant were acquired from a corporation engaged in interstate commerce. . . .

Any possible confusion created by what was left unsaid was therefore eliminated by what was specifically stated.

■■■■ Defendant further contends that the Court's charges on what the jury might consider in deciding whether competition was lessened were erroneous as a matter of law. Specifically, Brunswick asserts that these charges were erroneous in that they (a) instructed the jury that they could consider the fact that "Brunswick describes itself as 'Number One in Bowling' and is the largest manufacturer of bowling supplies and equipment as well as being the banker for its bowling center customers", (b) instructed the jury that they could conclude that competition had been lessened in the particular areas from the fact that Brunswick acquired more than an insubstantial percentage of the particular market areas involved.

Defendant argues that its corporate size and the fact that it is a manufacturer of bowling supplies are completely irrelevant to the case. This Court disagrees. Corporate size and status as a manufacturer are crucial to the question of whether competition was lessened. Defendant clings to the position that it should be considered as just another competitor in the retail bowling business. The law is to the contrary. Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962); Reynolds Metals Co. v. F. T. C., 114 U.S.App.D.C. 2, 309 F.2d 223, 229–30 (1962); Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679 (8th Cir. 1966).

■■■■ On the second point, it is admittedly true that occupation of a substantial portion of the acquired's market by the acquirer is not a per se antitrust violation. Transamerica Corp. v. Board of Governors, 206 F.2d 163, 170 (3d Cir. 1953), but a reasonable reading of the charge herein examined does not disclose such a suggestion. It is true, on the other hand, that the factors emphasized by the charge, and especially market percentage, are perhaps the most crucial considerations in Section 7 case. Brown Shoe Co. v. United States, *supra*; Sanitary Milk Products v. Bergjans, *supra*; United States v. Atlantic Richfield Co., 297 F.Supp. 1061 (S.D.N.Y.1969), aff'd sub nom., Bartlett v. United States, 401 U.S. 986, 91 S.Ct. 1233, 28 L.Ed.2d 527 (1971). The prerequisites for the granting of a motion for a new trial have not, therefore, been met by this contention.

■■■■ Defendant's last general objection relates to the Court's instructions as to damages. The initial specific argument, that plaintiffs could have suffered no damages because Brunswick

could not, as a matter of law, have lessened competition by merely substituting itself for other bowling establishments, is merely the logical extension of the defendant's prior argument on the issue and has been sufficiently commented upon heretofore.

Defendant also claims that the Court erred in instructing the jury as to the monetary amounts of the damages claimed by the plaintiffs in that doing so had the effect of transforming opinion testimony into fact and directed the jury to find a specific amount.

■ Initially, it should be noted that it is not error for the instructing Court to review the dollar amounts of the damages proposed by both plaintiff and defendant. Dowell, Inc. v. Jowers, 166 F.2d 214 (5th Cir.), cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759 (1948); Cape Cod Food Products v. National Cranberry Association, 119 F.Supp. 900 (D.Mass.1954). Reviewing the dollar amounts proposed by both sides was, of course, an impossible task in this case since defendant produced no damage evidence whatsoever. Defendant complains that the review of dollar amounts precluded the jury from considering several mitigating factors as to damages which were brought out on cross-examination. The jury, however, was repeatedly instructed that they were the sole judges of the facts. It would be most presumptuous of this Court to assume that they ignored anything and the charge, viewed in its entirety, certainly did not instruct them to do so. It was admittedly difficult to maintain proper balance in the damages portion of the charge, but the source of the difficulty is obvious. Counsel choose the manner in which a case is to be tried, the court instructs on the law as it interprets it and the evidence adduced at the trial.

■ Defendant's final argument is that the Court erred in instructing the jury as follows:

> If you find that Brunswick acquired one of these local bowling centers with such an effect, then you must assess damages with respect to that local market in the same way I have previously described in connection with monopolization and attempted monopolization.

The Court agrees and further finds that the jury's award of damages was excessive as a matter of law and must be either reduced or the matter retried to prevent a miscarriage of justice.

The plaintiff in question is Pueblo Bowl-O-Mat in Pueblo, Colorado. On the theory of reduced profits due to Brunswick's incursion, damages as to Pueblo were claimed by plaintiff as follows:

| Additional Annual Bowling Revenues | | Net Income Per $1,000 Bowling Revenues | | Per Year | Number of Years | Damages |
|---|---|---|---|---|---|---|
| $ 90,000 to $100,000 | × | $1,109 | = | $ 99,810 to $110,900 | 8/1/63 to 4/1/73 (9⅔) | $ 964,830 to $1,072,030 |

These computations, however, were offered to show damages for monopolization and/or attempted monopolization upon which claim the jury found for the defendants. As a matter of law, it was erroneous for the Court to instruct the jury to employ the same damage evidence with respect to the Section 7 claim because Brunswick did not acquire the competing establishment, Belmont Lanes, until April of 1965. Thus there could be no Section 7 damages for the 20 month period between August 1, 1963 and April 1, 1965, and the jury's award

of $964,830 (the lower of the amounts claimed by plaintiffs) is erroneous.

Plaintiffs argue that the controlling proposition on this issue is whether there is any basis in the record for the finding which the jury actually made. In the normal situation, this would be a correct statement, but trial courts enjoy wide discretion in this area. Krall v. Crouch Brothers, Inc., 473 F.2d 717, 718–719 (8th Cir. 1973), and it would be naive of this Court to think that the jury, after being erroneously instructed, arrived at the correct Section 7 time period but coincidentally found damages in the exact dollar amount evidenced by the aforementioned incorrect time period. Thus, it is this Court's decision that plaintiffs either submit to a remittitur on the damages of plaintiff Pueblo Bowl-O-Mat or retry the issue.

The one remaining question is the amount of the remittitur. Here too, quite predictably, there is disagreement. Defendant computes the remittitur as follows:

| Jury Verdict Before Trebling | Number of Months 8/1/63 to 4/1/73 | Per Month Damages | Number of Erroneous Months |
|---|---|---|---|
| $964,830 ÷ | 116 | = $8317.50 × | 20 = $166,350 (corrected figure) × 3 (trebling) = $499,050 |

———◆———

Plaintiff argues that this formula assumes too much. Specifically, they argue that it would be unwarranted for this Court to assume that if the jury had known that they could not assess damages for the period from August 1, 1963 to April 1, 1965, they would still have chosen the lower estimate of damages for the period from April 1, 1965 to April 1, 1973. They argue that the Court should employ the higher estimate for the 96 month period for which damages could correctly have been allotted and compute the remittitur as follows:

| Plaintiffs' High Damages Estimate | Number of Months 8/1/63 to 4/1/73 | Per Month Damages | Number of Correct Months |
|---|---|---|---|
| $1,072,030 ÷ | 116 | = $9,241.64 × | 96 = |

| Amount Jury Could Have Found Based on Evidence | Difference Between What Jury Could Have Found and What They Did Find |
|---|---|
| $887,197 (corrected figure) | $964,830 — $887,197 = $77,633 |

$77,633 × 3 (trebling) = $232,899

———◆———

To compute the remittitur otherwise, argue plaintiffs, would be an unwarranted attempt to decipher the jury's intent. Further, they cite Gorzalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033, 1047 (5th Cir. 1970) for the proposition that the Court may not substitute its own judgment for that of the jury. That statement is a correct one but of little assistance on the instant issue since it really begs the question.

The present function of this Court is to exercise its discretion and equitably correct the mistake committed. In its

326

opinion, it would be more of an invasion of the jury's function to say that they would have·computed yearly losses differently if they were aware of the correct time period. The final award was, after all, merely a function of what the jury found to be yearly losses times the number of years involved. In view of the foregoing, then, it is this Court's opinion that the amount of the remittitur should be $499,050.00. Pueblo Bowl-O-Mat's award would then be $2,395,440.00. Therefore, unless plaintiff Pueblo Bowl-O-Mat submits to a remittitur of $499,050.00, defendant Brunswick's motion for a new trial as to the damages of that plaintiff will be granted. Defendant's motions in all other respects are hereby denied.

Submit appropriate Orders.